[Crim. No. 3405.   Third Dist.   Jan. 31, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE DOZIE, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v. BOBBY JOE McCLINTON, Defendant and Appellant.

(Consolidated Cases.)

Stanley G. Lerner, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John Giordano, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—After a nonjury trial defendants were convicted of first degree robbery and vehicle theft. They had met the victim, drank with him in several bars, and drove with him in his car to a rural area, where one of the defendants beat him to unconsciousness with his fists. They took what he had in his pockets, left him unconscious by the roadway and drove away in his car. Sole contention on appeal is that the robbery was not accomplished by torture or by a person armed with a dangerous or deadly weapon, therefore could not be robbery in the first degree. The People contend that a defendant's fist, used with sufficient force, may constitute a ''dangerous or deadly weapon'' for the purpose of Penal Code section 211a.[1]

The question is one of first impression in this state. Several decisions hold that a shod foot, although not inherently a dangerous or deadly weapon, may be used as such, thus constituting an instrumentality of first degree robbery. (*People v. Bennett*, 208 Cal.App.2d 317, 320 [25 Cal.Rptr. 257]; *People v. Wood*, 192 Cal.App.2d 393, 396 [13 Cal.Rptr. 339].) Counsel for the People draw analogies to cases decided under Penal Code section 245 (''assault ... with a deadly weapon or instrument or by any means of force likely to produce great bodily injury''). There are many decisions holding that use of the hands or fists will support an assault conviction under Penal Code section 245. All such decisions turn on the fact that hands or fists may be used with sufficient force to create great bodily injury, not that they fall into the class of deadly weapons or instruments. (See, for example, *People v. Hinshaw*, 194 Cal. 1, 22, 27 [227 P. 156]; *People v. White*, 195 Cal.App.2d 389, 392 [15 Cal.Rptr. 665];

---

[1]Penal Code section 211 provides:

''Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.''

Penal Code section 211a states:

''All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, and the robbery of any person who is performing his duties as operator of any motor vehicle, streetcar, or trackless trolley used for the transportation of persons for hire, is robbery in the first degree. All other kinds of robbery are of the second degree.''

1 Witkin, Cal. Crimes, pp. 255-256.) ▌ Use of force likely to produce great bodily harm is not a determinative factor in first degree robbery, as defined by section 211a. Thus the assault cases are but a thin analogy.

There are decisions in other states holding that fists are not a "dangerous weapon." These cases are not particularly helpful, being interpretations of particular criminal statutes. (*State* v. *Calvin,* 209 La. 257 [24 So.2d 467]; *People* v. *Vollmer,* 299 N.Y. 347 [87 N.E.2d 291]; *Bean* v. *State,* 77 Okla. Crim. 73 [138 P.2d 563]; see note 22 A.L.R.2d 854.)

There is a well-established classification of weapons for the purpose of the robbery statute. Weapons such as guns and blackjacks are designed for dangerous and deadly use; hence, as a matter of law, they establish first degree robbery. Other instrumentalities, such as razors, pocket knives and various sharp or heavy objects, are not weapons in the strict sense, yet may become such according to the manner of use; whether they constitute a "dangerous or deadly weapon" is a question of fact for determination in each case. (*People* v. *Raleigh,* 128 Cal.App. 105, 108-109 [16 P.2d 752]; see also *People* v. *Klimek,* 172 Cal.App.2d 36, 41-42 [341 P.2d 722]; 1 Witkin, *op. cit.,* pp. 399-400.) That classification is not useful here. Even in the second group of cases, the offender is "armed," that is, he equips himself with some object, device or instrumentality extrinsic to his own body and capable of dangerous or deadly use. Obviously, human fists, just as much as any extrinsic weapon or instrument, may be used to accomplish deadly results. (See *People* v. *Toth,* 182 Cal. App.2d 819, 833-834 [6 Cal.Rptr. 372]; *People* v. *Teixeira,* 136 Cal.App.2d 136, 150 [288 P.2d 535].) The question is not whether the naked fists constitute a weapon, but whether the fist user comes within the statutory concept of one *armed* with a weapon.

▌ The phrase "armed with a deadly weapon" means that the user is furnished or equipped with such a weapon. (*People* v. *Klimek, supra,* 172 Cal.App.2d at p. 41; *People* v. *Hall,* 105 Cal.App. 359, 361 [287 P. 533].) In a sense, all who possess normal appendages are furnished or equipped with fists. Children, most women, many men, lack physical strength to use their fists to dangerous or deadly effect. Other persons possess the necessary strength. Arguably, persons in the first category are not armed with a dangerous weapon, while persons in the second category may be so armed if a brutal beating is the actual means of accomplishing a rob-

bery. That notion would require the trier of fact to base his decision upon the degree of force actually used, usually by considering the character and extent of the victim's injuries. Such is the method employed to determine guilt of assault by means of force likely to produce great bodily injury under Penal Code section 245. (*People* v. *White, supra,* 195 Cal. App.2d at p. 392.)

The statutory distinction between first and second degree robbery, in contrast, turns not so much on a judgment as to the degree of force actually inflicted upon the victim, as on the character of the instrumentality with which the offender is armed. The weapon need not be used at all. (*People* v. *Jones,* 114 Cal.App. 91 [299 P. 559]; *People* v. *Hall, supra,* 105 Cal.App. 359; *People* v. *Seaman,* 101 Cal. App. 302, 304 [281 P. 660]; see *In re Chapman,* 43 Cal.2d 385, 389 [273 P.2d 817].) To classify a taking as first or second degree robbery according to a measure of physical power, brutality or injurious effect would run counter to the statute, which rests the judgment upon the character of the weapon with which the offender is equipped, not on gradations of power or injury. The layman's phrase ''armed robbery'' is not at all an inaccurate description of the offense.

We conclude that one equipped only with his naked hands or fists is not armed with a dangerous or deadly weapon within the meaning of Penal Code section 211a. There is no evidence to sustain the finding which fixes defendants' offense as robbery in the first degree, hence the finding cannot stand. There being no question that defendants violated Penal Code section 211, their crime becomes robbery in the second degree.

This court has power to modify defendants' punishment as an incident to modification of the judgment. (Pen. Code, § 1260; *People* v. *Odle,* 37 Cal.2d 52, 58 [230 P.2d 345].) Defendants' applications for probation were denied by the trial court, and they were sentenced to serve concurrent terms in the state prison for the robbery and for auto theft. (Veh. Code, § 10851.) Robbery is punishable by a state prison sentence which carries no maximum, but a minimum of five years for first degree robbery and one year for second degree. (Pen. Code, § 213.) Violation of Vehicle Code section 10851 calls for one to five years in the state prison, with the alternative of a county jail sentence and fine. Actual duration of confinement is, of course, a matter for the Adult Authority. Reduction of the robbery to second degree will

not entail any alteration of defendants' prison terms other than a reduction of the minimum. Since modification of the judgment will become a matter of the record with the Adult Authority, there is no point in bringing defendants before the trial court for redetermination of their prison sentences. On the other hand, we do not know how the trial court would have disposed of defendants' probation applications in light of a second degree robbery conviction. Defendants should be returned to the trial court only if that court desires to act affirmatively upon their probation applications in view of the modification of judgment. We therefore make the following order:

The judgment is modified by a reduction of the degree of the robbery to robbery in the second degree. The trial court is directed to reconsider defendants' probation applications and, within thirty days from receipt of the remittitur, enter its order either denying probation or directing defendants' return to it for admission to probation. In all other respects, the judgment is affirmed.

Pierce, P. J., and Schottky, J., concurred.