[No. S054812. Nov. 17, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND AGUILAR et al., Defendants and Appellants.

**COUNSEL**

Meredith J. Watts and Patricia L. Watkins, under appointments by the Supreme Court, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WERDEGAR. J.**—Penal Code section 245, subdivision (a)(1)[1] punishes "an assault upon the person of another with a *deadly weapon or instrument other than a firearm* or by any means of *force likely* to produce great bodily injury." (Italics added.) We granted review to determine whether hands or feet can constitute "deadly weapons" within the meaning of the statute. That hands and feet may be capable of inflicting deadly force, as by means of karate kicks or prizefighter blows, is not in question. We conclude, however,

---

[1]Further statutory references are to the Penal Code unless otherwise specified.

that the term "weapon," as used in the statute, implies an object extrinsic to the body. Contrary to the Court of Appeal, we further conclude the jury was not asked to find defendant Raymond Aguilar guilty under an erroneous legal theory; hence, reversal of defendant's conviction (under the rule of *People* v. *Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45]) was improper. Accordingly, the judgment is reversed and the cause remanded to the Court of Appeal for consideration of defendant's other appellate claims.

## FACTS

During the evening of July 19, 1993, defendant, his codefendant Richard Perez and two companions, Bobby Nieblas and Edward Prado, had been drinking beer and were driving around Gilroy. Earlier that evening, while the group was at a Taco Bell restaurant, Nieblas was involved in a verbal altercation with a person on rollerblades. Later, as the four were driving around, Nieblas spotted the victim, Donald Tenny, Jr., who was rollerblading. Nieblas asked Perez, who was driving, to stop the car so he could see if Tenny was the same person who had "hassled" him at the Taco Bell.

Despite Tenny's efforts to communicate that he was not the person for whom the group was looking, a fight ensued. Tenny was repeatedly kicked "like [a] football" and suffered, as well, a few blows from the hands of his assailants. Exactly who did what during the assault was disputed at trial. Perez demanded Tenny's watch and billfold; when Tenny said he had no billfold, Perez stated, "You will die for that." Tenny estimated the fight lasted from one to fourteen minutes, at which point the assailants got into their car and left. Tenny then noticed his watch was missing.

Having received a report of a fight, police stopped Perez's car a short distance away; after receiving a further report the incident might also have involved robbery of Tenny's watch, an officer visually inspecting the interior of Perez's car found the watch on the floorboard in front of defendant. Brought to the scene, Tenny identified the suspect vehicle and its occupants.

Tenny suffered multiple bruises, a concussion, a broken left thumb, a wound to the back of his head requiring stitches and an injury to his ankle requiring a cast.

The jury found both defendant and Perez guilty of assault with a deadly weapon or by means of force likely to produce great bodily injury. (§ 245, subd. (a)(1).) The jury also found Perez guilty, but defendant not guilty, of robbery (§ 211) and found true as to Perez, but not true as to defendant, great bodily injury enhancement allegations. (§§ 12022.7, 1203, subd. (e)(3).)

On appeal, in reliance on *People* v. *Guiton, supra,* 4 Cal.4th 1116, the Court of Appeal reversed defendant Aguilar's conviction, reasoning the prosecutor had relied on a legally incorrect theory in suggesting, during closing argument, that hands and feet may be deadly weapons within the meaning of section 245, subdivision (a)(1).[2] We granted the Attorney General's petition for review.

## DISCUSSION

█ Section 245, subdivision (a)(1), punishes assaults committed by the following means: "with a deadly weapon or instrument other than a firearm," or by "any means of force likely to produce great bodily injury." One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial. (See *People* v. *Wingo* (1975) 14 Cal.3d 169, 176 [121 Cal.Rptr. 97, 534 P.2d 1001].)
█ That the use of hands or fists alone may support a conviction of assault "by means of force likely to produce great bodily injury" is well established (*ibid.; People* v. *Armstrong* (1992) 8 Cal.App.4th 1060, 1066 [10 Cal.Rptr.2d 839]; see *People* v. *Duke* (1985) 174 Cal.App.3d 296, 302-303 [219 Cal.Rptr. 873] [ when hands, fists and feet are employed in an assault, normally the charge will be assault with force likely to produce great bodily injury]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 420, p. 482), but this court has never previously decided whether, under section 245, subdivision (a)(1), the use of hands or feet alone may suffice for conviction of assault with a deadly weapon.[3]

█ As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be

---

[2]The Court of Appeal, however, affirmed Perez's conviction on the assault charge, reasoning the jury's true finding as to Perez on the related enhancement allegation signified it would have found he used force likely to produce great bodily injury, rather than a deadly weapon. We denied Perez's petition for review.

[3]Courts in other jurisdictions have divided on this question. (Cf., e.g., *Wilson* v. *State* (1924) 162 Ark. 494 [258 S.W. 972, 33 A.L.R. 1182] [assault by fists and feet does not qualify as use of a deadly weapon under aggravated assault statute]; *People* v. *Bias* (1985) 131 Ill.App.3d 98 [86 Ill.Dec 256, 475 N.E.2d 253] [sharp fingernails could not be considered dangerous weapons under aggravated assault statute]; *State* v. *Calvin* (1945) 209 La. 257 [24 So.2d 467] [fists and teeth did not qualify as dangerous weapons]; *Seiter* v. *State* (Mo.Ct.App. 1986) 719 S.W.2d 141, 142-143 [hands, as used to choke victim, did not constitute "dangerous instrument" within meaning of statutory definition encompassing " 'any instrument . . . which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury' "]; *State* v. *Gordon* (1989) 161 Ariz. 308 [778 P.2d 1204] [fists did not constitute deadly weapon or dangerous instrument]; with *Hollis* v. *State* (Ala.Crim.App. 1982) 417 So.2d 617 [fists used to beat 81-year-old woman could constitute "deadly weapon" or "dangerous instrument" under first degree assault statute]; *Kirby* v. *State* (1978) 145 Ga.App. 813 [245 S.E.2d 43] [stating in dicta that, although fists are not deadly

capable of producing and likely to produce, death or great bodily injury." (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275-276 [186 Cal.Rptr. 898].) Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. (*People* v. *Graham* (1969) 71 Cal.2d 303, 327 [78 Cal.Rptr. 217, 455 P.2d 153], disapproved on other grounds in *People* v. *Ray* (1975) 14 Cal.3d 20, 32 [120 Cal.Rptr. 377, 533 P.2d 1017].) Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. (*In re Jose R., supra,* 137 Cal.App.3d at p. 276; see *People* v. *Nealis* (1991) 232 Cal.App.3d Supp. 1, 4, fn. 2 [283 Cal.Rptr. 376] [citing California decisions holding various objects, not deadly per se, to be deadly weapons under the particular circumstances].)

■ In the present case, the prosecutor asserted in the course of his closing argument that hands and feet may be deadly weapons. (We will more fully address the context of the statement below.) We are asked to determine whether the prosecutor's comment was an accurate statement of the law within the meaning of section 245, subdivision (a)(1).

■ As the Court of Appeal recognized, to answer this question we must look to the language of the statute and accord its words their usual, ordinary and commonsense meaning based on the language used and the evident

---

weapons per se, the trier of fact may find them to be such, depending on the manner and means of their use and the severity of the wounds inflicted]; *State* v. *Born* (1968) 280 Minn. 306 [159 N.W.2d 283, 33 A.L.R.3d 919] [fists and feet may be dangerous weapons, depending on the circumstances]; see generally, Annot., Parts of Human Body as Dangerous Weapons (1981) 8 A.L.R.4th 1268.)

Out-of-state decisions are of limited utility, as the language of the relevant statutes is not always similar to section 245, subdivision (a)(1). For example, the Texas statute at issue in *Morales* v. *State* (Tex.Crim.App. 1990) 792 S.W.2d 789, 790, which upheld a deadly weapon finding for the use of hands and a pair of underpants to smother the victim, defined a deadly weapon broadly as "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) *anything* that in the manner of its use or intended use is capable of causing death or serious bodily injury." (Tex. Penal Code Ann. § 1.07(a)(11).) (Italics added.) Some sister-state courts' pronouncements that hands and feet may be deadly weapons occur in dicta. (E.g., *Pettigrew* v. *State* (Okla.Crim.App. 1967) 430 P.2d 808, 812 [under statute proscribing assault " 'by means of any deadly weapon, or by such other means of force as is likely to produce death,' " information charged defendant with assault with " 'force . . . likely . . . ,' " reviewing court stated hands and feet may be deadly weapons]; *Kirby* v. *State, supra,* 145 Ga.App. 813 [245 S.E.2d 43] [although defendant claimed to have used only fists, there was evidence from which jury could have found he used metal pipe to beat victim].)

purpose for which the statute was adopted. (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) The words of the statute must be construed in their context. (*Id.* at p. 599.) We also generally avoid a reading that renders any part of a statute superfluous. (*Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1058-1059 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

■ The Court of Appeal concluded the ordinary understanding of the phrase "deadly weapon or instrument" does not encompass hands or feet per se, but rather includes only objects extrinsic to the body. The Court of Appeal also reasoned that to define "deadly weapon or instrument" to include feet and hands would make redundant the clause "force likely to produce great bodily injury." This is so because deadly weapons or instruments not inherently deadly are defined by their use in a manner capable of producing great bodily injury. (*People* v. *White* (1963) 212 Cal.App.2d 464, 465 [28 Cal.Rptr. 67].) According to the Court of Appeal, "if hands and feet can constitute deadly weapons, then it would appear that anything—inanimate or animate object or body parts such as hands, feet or teeth—could, in appropriate circumstances, be considered a 'deadly weapon.'" If this were the case, the court noted, the "force likely to produce great bodily injury" clause would be unnecessary. The Court of Appeal inferred from the inclusion of both clauses in section 245, subdivision (a)(1), a legislative intent that a meaningful difference exist between the two clauses, an intent furthered by the court's reading of the statute.

The Court of Appeal's inference appears sound, particularly in light of the history of section 245. When first enacted in 1872, section 245 read as follows: "Every person who, with intent to do bodily harm, and without just cause or excuse, or when no considerable provocation appears, or when the circumstances show an abandoned and malignant heart, commits an assault upon the person of another with a deadly weapon, instrument, or other thing, is punishable by imprisonment in the State Prison not exceeding two years, or by fine not exceeding five thousand dollars, or by both." (1872 Pen. Code, § 245.) Section 245 was amended two years later, in 1874; as relevant here, the amendments eliminated the intent and lack-of-provocation elements and added the "force likely" clause as an alternative to the "deadly weapon" clause. (Code Amends. 1873-1874 (Pen. Code) ch. 614, § 22, p. 428.)

Presumably in amending the statute the Legislature and the Code Commissioners, who drafted the amendment, were aware of this court's intervening opinion in *People* v. *Murat* (1873) 45 Cal. 281. In that case, we reversed a conviction of assault with intent to murder because the indictment failed to allege the use of a deadly weapon. We said: "In fact no case in this Court has

been brought to our attention where the prisoner had been convicted of an assault made with a deadly weapon with intent to inflict upon the person of another a bodily injury in which there had been a failure altogether to allege the assault to have been made with a deadly weapon; *indeed, the fact that a deadly weapon was resorted to by the prisoner is made by the statute itself an indispensable characteristic of such an assault, and one which distinguishes it from all others.*" (*Id.* at p. 283, italics added; see also 1 Wharton, A Treatise on Criminal Law (9th ed. 1885) § 645d, pp. 586-588 ["The gravamen of the offense [of assault with a deadly weapon] is the use of a dangerous weapon with intent to hurt."].) The italicized language thus supports the view the "deadly weapon" language of section 245, as originally enacted, did not encompass assaults accomplished by mere use of physical force without a weapon.

As noted, within one year of this court's decision in *People v. Murat, supra,* 45 Cal. 281, the Legislature amended section 245 to add the "force likely" clause as an alternative to the "deadly weapon" clause; only after that amendment do we find a decision of this court apparently recognizing that an aggravated assault within the meaning of section 245 may be committed without the use of a weapon or other extrinsic object. (*People v. Emmons* (1882) 61 Cal. 487, 488 [reversing trial court judgment sustaining defendant's demurrer to indictment that alleged violation of section 245 in that defendant, with force and violence, threw victim from third story window].) This sequence of events is consistent with the inference that addition to section 245 of the "force likely" clause was necessary in order to punish as aggravated assaults those assaults not involving the use of a weapon extrinsic to the assailant's body and that the term "deadly weapon," as used in section 245, thus was not intended to encompass bare hands or feet.

The Court of Appeal also found support for its conclusion in several decisions interpreting the term "deadly weapon" in related contexts. *People v. Davis* (1996) 42 Cal.App.4th 806 [49 Cal.Rptr.2d 890] (*Davis*) addressed whether, for purposes of the prior serious felony enhancement provided in sections 667, subdivision (a)(1), and 1192.7, subdivision (c)(23), a defendant's prior conviction under section 245, subdivision (a)(1), involved the personal use of a deadly or dangerous weapon. In the defendant's prior case he had pleaded guilty to an information alleging assault " 'with a deadly weapon . . . to wit, Hands, and by means of force likely to produce great bodily injury.' " (*Davis, supra,* 42 Cal.App.4th at p. 812.) The *Davis* court concluded an assault with hands does not show the personal use of a dangerous or deadly weapon required for a serious felony because the weapon must be an object or weapon extrinsic to the human body. (*Id.* at p. 814.) The court observed, however, that "whether [defendant] can commit a

public offense of assault with a deadly weapon with his hands presents an interesting issue of first impression, but one this court does not have to reach." (*Id.* at p. 815.) As the Court of Appeal in the present case noted, *Davis* reasoned that distinguishing between assaults with a deadly weapon or instrument and assaults by means of force likely to produce great bodily injury is generally unnecessary, "since all aggravated assaults are ultimately determined based on the force likely to be applied against a person." (*Id.* at pp. 814-815.)

In *People* v. *Dozie* (1964) 224 Cal.App.2d 474, 477 [36 Cal.Rptr. 728] (*Dozie*), the Court of Appeal concluded a defendant's fist could not constitute a dangerous or deadly weapon for purposes of the first degree robbery statute, former section 211a.[4] Although *Dozie* distinguished the armed robbery statute from section 245 on the basis of the two statutes' differing purposes, the Court of Appeal nevertheless found *Dozie* supportive of its conclusion. In the words of the *Dozie* court, "There are many decisions holding that use of the hands or fists will support an assault conviction under Penal Code section 245. All such decisions turn on the fact that hands or fists may be used with sufficient force to create bodily injury, not that they fall into the class of deadly weapons or instruments." (*Dozie, supra,* 224 Cal.App.2d at p. 475.)

The Attorney General contends the Court of Appeal erred in considering the term "deadly weapon or instrument" as a whole; he submits, rather, that the phrase "deadly weapon" must be read disjunctively from the phrase "instrument other than a firearm." As the Attorney General reads section 245, subdivision (a)(1), the word "deadly" modifies both "weapon" and "instrument other than a firearm." Thus, he reasons, section 245, subdivision (a)(1), prohibits three different acts: (1) assault with a deadly weapon; (2) assault with a deadly instrument other than a firearm; and (3) assault with force likely to produce great bodily injury. According to the Attorney General, the phrase "deadly instrument other than a firearm," but not the phrase "deadly weapon," connotes an object extrinsic to the body. In support of this interpretation, the Attorney General cites the Model Penal Code,[5]

---

[4]As relevant here, former section 211a provided: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon . . . . is robbery in the first degree." (Enacted by Stats. 1923, ch. 127, § 1, p. 270 and repealed by Stats. 1986, ch. 1428, § 1, p. 5123.)

[5]Section 210.0 of the Model Penal Code, as referenced in Black's Law Dictionary, defines "deadly weapon" as "[a]ny firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." (Black's Law Dict. (6th ed. 1990) p. 398, col. 1.)

Webster's Dictionary,[6] and several uses of the term "weapon" in world literature.[7]

The Attorney General's argument is unpersuasive. If the term "weapon" can mean a part of the human body, no reason appears why the same could not be said of the term "instrument," which is simply "a means by which something is done." (American Heritage Dict. (2d college ed. 1982) p. 666.) Moreover, as defendant notes, if "deadly weapon" is separated from "other than a firearm," then the weapon clause of section 245, subdivision (a)(1), would include assault with a firearm and thus render subdivision (a)(2) of section 245 a redundancy, a result we strive to avoid under recognized canons of construction.[8] (*Quintano v. Mercury Casualty Co., supra*, 11 Cal.4th at pp. 1058-1059.)

The Attorney General also criticizes the Court of Appeal's conclusion that the clause "force likely to produce great bodily injury" would be redundant if hands or feet were held to constitute deadly weapons. The "force" clause would be redundant to the "deadly weapon" or "deadly . . . instrument other than a firearm" language, the Attorney General contends, only if the "force" clause spoke in terms of "force likely to produce death." But, as the Attorney General notes, the clause instead punishes assault by means of "force likely to produce great bodily injury." Therefore, according to the Attorney General, the apparent rationale for the inclusion of the "force" clause is that it "serves to additionally punish individuals who use less than deadly force, but nonetheless use force which is likely to produce great bodily injury." This argument, however, overlooks that a "deadly" weapon is one that is used in such a manner as to be capable of producing death *or great bodily injury*. (*In re Jose R., supra*, 137 Cal.App.3d at pp. 275-276; see *People v. Brookins* (1989) 215 Cal.App.3d 1297, 1305-1306 [264 Cal.Rptr. 240]; see also CALJIC No. 9.02.) Both the "weapon or instrument" clause of the statute and the "force likely" clause look to the probability or capability of producing great bodily injury.

---

[6]Webster's New World Dictionary of American English (3d college ed. 1988) page 1512, defines "weapon" as "an instrument or device of any kind used to injure or kill, as in fighting or hunting . . . any organ or part of an organism used for attacking or defending . . . any means of attack or defense . . . ."

[7]The Attorney General observes: "In King Lear, Shakespeare referred to a woman's tears as weapons. In Satires, Epistles, and Odes of Horace, Alexander Pope calls 'satire' his weapon. And, in Some Love to Roam, Charles MacKay refers to 'thought' as a weapon stronger than cannon balls. (Bartlett, Familiar Quotations (11th ed. 1941) pp. 98, 213, 504.)"

[8]Section 245, subdivision (a)(2), provides as follows: "Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment."

Reading the statute as a whole in a commonsense manner that avoids rendering any part superfluous (*Quintano* v. *Mercury Casualty Co, supra,* 11 Cal.4th at pp. 1058-1059) and considering its history, we conclude a "deadly weapon" within the meaning of section 245 must be an object extrinsic to the human body. Bare hands or feet, therefore, cannot be deadly weapons; to the extent the prosecutor's argument suggested the contrary, it was erroneous.

█ Despite this error in the prosecutor's argument, the Attorney General contends reversal of defendant's conviction was unnecessary. First, he maintains reversal was unwarranted because the evidence overwhelmingly showed that defendant used force likely to produce great bodily injury or that he aided and abetted Perez in so doing. █ As the Attorney General observes, when the prosecution presents the jury with alternative factual scenarios on the basis of which it may convict a defendant, but the evidence is insufficient to support one of those scenarios, the error is not reversible (absent an indication in the record that the verdict actually did rest on the inadequate ground). (See *People* v. *Guiton, supra,* 4 Cal.4th at p. 1129.) If, however, an erroneous *instruction* would permit the jury to convict based on the factually insufficient scenario, a reviewing court will reverse the conviction unless, from the jury's findings, it can determine beyond a reasonable doubt the jury did not in fact rely on the erroneous instruction and factually deficient scenario. (*People* v. *Harris* (1994) 9 Cal.4th 407, 416-419 [37 Cal.Rptr.2d 200, 886 P.2d 1193].) █ In the instant case, the Attorney General argues, any error in the prosecutor's statement was harmless because the evidence was overwhelming that, in assaulting the victim, defendant used force likely to produce great bodily injury and that he aided and abetted Perez and Nieblas as they assaulted the victim. The Attorney General's reasoning, however, fails to meet directly defendant's argument, which is that the prosecutor's statement hands or feet may constitute deadly weapons arguably invited the jury to rely on that erroneous proposition without regard to the force used, and the jury's findings do not reveal the theory underlying the assault conviction.

Second, the Attorney General argues that the jury could properly consider the deadly weapon theory of assault because shoes are extrinsic to the human body and are instruments capable of inflicting death or great bodily injury, and the record shows defendant and his coparticipants were wearing shoes at the time of the offense. The brunt of the assault, according to the victim, consisted of kicks; the assailants administered only a "very few" blows with fists. Therefore, according to the Attorney General, whether defendant's shoes constituted a deadly weapon was for the jury to decide. Viewing the evidence in light of the instructions given by the trial court, the Attorney General argues, the jury thus was not asked to find guilt under an erroneous theory, and its verdict should stand.

The Attorney General's contention has some force. There can be no doubt that some footwear, such as hobnailed or steel-toed boots, is capable of being wielded in a way likely to produce death or serious injury, and as such may constitute weapons within the meaning of section 245, subdivision (a)(1). While evidence is lacking regarding the type of footwear worn by the four assailants, that they *were* shod is not disputed. This fact, together with evidence concerning the circumstances of the assault, thus provides some evidence from which the jury could find the assailants wielded their shod feet in a manner capable of producing, and likely to produce, death or great bodily injury. Nevertheless, in arguing "feet" could be deadly weapons, the prosecutor did not expressly advance the theory the Attorney General now articulates; to uphold the verdict on this basis, therefore, would be to supply a link in the chain of reasoning we cannot be sure the jury considered.

To resolve this case we need not, however, rely on the proposition the jury properly could have convicted defendant of aggravated assault on the theory he used his shoes as deadly weapons. The judgment of guilt is supportable for another reason the Attorney General cites: Ultimately (except in those cases involving an inherently dangerous weapon), the jury's decisionmaking process in an aggravated assault case under section 245, subdivision (a)(1), is functionally identical regardless of whether, in the particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used. As the Court of Appeal reasoned in *Davis, supra,* 42 Cal.App.4th 806, "[A]ll aggravated assaults are ultimately determined based on the force likely to be applied against a person." (*Id.* at pp. 814-815.)

Given the availability, under current sentencing law, of enhancements affording severe punishment for assaults that result in serious injury or are committed on especially vulnerable victims, even when no firearm or other weapon is employed (see, e.g., §§ 12022.7, subds. (a) [personal infliction of bodily injury], (b) [attack producing coma or paralysis], (c) [victim age 70 or older], (d) [injury involving domestic violence], 12022.8 [injury occurring during commission of sexual offenses], 12022.9 [intentional injury producing termination of pregnancy], 12022.95 [causing or permitting unjustifiable pain or injury that results in death of a child]; see also §§ 1192.7, subd. (c)(8) [personal infliction of great bodily injury renders felony "serious" for purposes of recidivist sentencing scheme], 667.5, subd. (c)(8) [personal infliction of great bodily injury renders felony "violent" for purposes of recidivist sentencing scheme]), the independent significance of the use of hands or feet as the means of injury has diminished as a practical matter. Nevertheless, we are confident that in tailoring their arguments to the jury,

prosecutors henceforth will use correct nomenclature and no more label a fist a deadly weapon than call a foot a firearm. (See § 245, subd. (a)(2).)

That the jury here was not, in the end, invited to reach a guilty verdict by a faulty analytical path is clear from a consideration of the context of the prosecutor's summation: "So we know we have the assault; we know we have Mr. Tenny beaten with a deadly weapon or weapons or instruments, or with force likely to produce great bodily injury. [¶] And we definitely have that, I'll explain that in just a moment. Hands and feet can be deadly weapons, and you don't have to be a black belt in karate, like sometimes you see on television. *It's the manner in which the hand or feet are used. If they are used in such a manner that it could cause, could cause great bodily injury, then those become dangerous weapons.*" (Italics added.) Thus the prosecutor argued only if the jury found defendant inflicted kicks and blows in a manner that created a likelihood of great bodily injury could it conclude he had used a deadly or dangerous weapon. Similarly, only if it likewise so found could the jury conclude defendant had used force likely to create great bodily injury. Regardless, therefore, of which path the jury took, the same finding was necessary to a verdict of guilt.[9] Moments later in his summation, the prosecutor added: "So if three guys hang around, and one guy is on the ground . . . and [they] try to kick him and actually miss, they have committed assault with a deadly weapon." In the context of the immediately preceding argument, which emphasized the "manner in which the hands or feet are used," we are confident this argument, although erroneous, would not have caused the jury to deviate from the proper analytical path. And, as noted above, the prosecutor's implication was correct that actual contact or physical injury to the victim is not essential to a conviction for aggravated assault. (See *People* v. *Wingo, supra,* 14 Cal.3d at p. 176.)

The standard instructions on aggravated assault reflect this fundamental identity of the concepts of assault with a deadly weapon and assault by means of force likely to produce great bodily injury. (See *In re Mosley* (1970) 1 Cal.3d 913, 919, fn. 5 [83 Cal.Rptr. 809, 464 P.2d 473] ["The

---

[9]Defendant argues the prosecutor's error in stating hands and feet may be deadly weapons cannot be deemed harmless because the jury found not true the allegation that defendant personally inflicted great bodily injury. (§ 12022.7.) He contends the not true finding foreclosed the conclusion the jury could have convicted defendant of assault by means of force likely to produce great bodily injury. We disagree; the finding has no such effect. One may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial. (See *People* v. *Wingo, supra,* 14 Cal.3d at p. 176.) The not true finding on the enhancement allegation thus means only that the jury did not believe defendant *actually inflicted* great bodily injury on the victim; it cannot be understood as a determination on the question whether defendant used force *likely* to inflict such injury.

offense of assault by means of force likely to produce great bodily injury is not an offense separate from . . . the offense of assault with a deadly weapon."].) Those instructions, as relevant here and as read to the jury in this case, provide as follows: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by means of force likely to produce great bodily injury is guilty of a violation of section 245, subdivision (a)(1) of the Penal Code, a crime. [¶] In order to prove such crime, each of the following elements must be proved: One, a person was assaulted, and two, the assault was committed by the use of a deadly weapon or instrument or by means of force likely to produce great bodily injury. *A deadly weapon is any object, instrument, or weapon which is used in such a manner as to be capable of producing, and likely to produce, death or great bodily injury.*" (See CALJIC No. 9.02, italics added.) Thus, the instructions, like the prosecutor's argument, called on the jury to find defendant's conduct had the capability and probability of inflicting great bodily injury under either a "deadly weapon" theory or a "force likely" theory. The jury's analytical process was the same in either event.[10]

The foregoing analysis also disposes of defendant's argument concerning the prosecutor's statement hands can be deadly weapons. As we have said, in arguing "hands," per se, may be deadly weapons depending on the manner of their use, the prosecutor misspoke. Nor does anything in the record indicate defendant used weighted gloves, brass knuckles or any other weapon or instrument extrinsic to his hands that properly could be found to be a deadly weapon within the meaning of section 245, subdivision (a)(1). Nevertheless, given the victim's testimony his assailants administered only a "very few" blows with their fists as compared with the number of kicks they delivered, that defendant's conviction was predicated on his use of his fists seems unlikely. Even, however, if the jury used the fact of the blows with hands to find defendant committed assault with a deadly weapon, it necessarily would have found, as we have seen, that defendant used his hands in a manner *likely to produce great bodily injury.* Moreover, the jury was instructed that "An assault by means of force likely to produce great bodily injury may be committed with the hand or fists. Proof of such an assault need not show that the defendant actually injured the other person. However, there must be proof that as a result of physical force used or attempted to be used, and the manner of such use or of such such [*sic*] attempt, there was a likelihood of

---

[10]We observe that, despite the identity of the jury's reasoning processes under either the "deadly weapon" clause or the "force likely" clause in this case, our holding does not reduce the former clause to surplusage. There remain assaults involving weapons that are deadly per se, such as dirks and blackjacks, in which the prosecutor may argue for, and the jury convict of, aggravated assault based on the mere character of the weapon. (See *People* v. *Graham, supra,* 71 Cal.2d at p. 327, disapproved on other grounds in *People* v. *Ray, supra,* 14 Cal.3d at p. 32.)

great bodily injury being inflicted upon another person." The instructions thus specifically invited the jury to consider the evidence of any blows from fists under the correct rubric ("force likely to produce great bodily injury").

CONCLUSION

The judgment of the Court of Appeal is reversed and the cause is remanded to the Court of Appeal for consideration of defendant's remaining appellate claims.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J., Concurring.**—I write separately to clarify my understanding of the majority opinion.

Defendant was charged with and convicted of a violation of Penal Code section 245, subdivision (a)(1) (hereafter section 245(a)(1)), which punishes an assault committed either (1) with a "deadly weapon or instrument" other than a firearm or (2) by means of any "force likely to produce great bodily injury."

In turn, a "deadly weapon or instrument" is either (1) a weapon that is deadly per se (e.g., a dagger) or (2) any "object, instrument, or weapon" that is *used* in a way likely to produce death or great bodily injury (e.g., a hammer). (*People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153]; CALJIC No. 9.02.)

Reading this definition back into the statute, we find that section 245(a)(1) thus actually punishes an assault committed in any one of three ways: i.e., (1) with a weapon deadly per se, or (2) with an *object used* in a way likely to produce great bodily injury, or (3) by means of a *force* also likely to produce great bodily injury.

We deal here with an assault committed with hands or feet. The cases hold that an assault committed with hands or feet *can* constitute the third of the foregoing three ways of violating section 245(a)(1), i.e., by means of a *force* likely to produce great bodily injury. (See *People* v. *Wingo* (1975) 14 Cal.3d 169, 176 [121 Cal.Rptr. 97, 534 P.2d 1001], and cases cited.) I understand the majority now to hold that an assault committed with hands or feet *cannot* constitute either the first or second of these three ways of violating section 245(a)(1), i.e., with a weapon deadly per se or with an instrument used in a way likely to produce great bodily injury, because to convict on either theory the weapon or instrument must be an object extrinsic to the human body, which hands and feet are obviously not. I agree.

The prosecutor therefore erred in telling the jury that "Hands and feet can be deadly weapons . . . [i]f they are used in such a manner that it could cause . . . great bodily injury . . . ." Because of the compound structure of section 245(a)(1), however, I further agree with the majority that the error was nonprejudicial in this case. The majority stress that the prosecutor in effect told the jury it could not find defendant committed assault with a deadly weapon unless it found he used his hands or feet in a way likely to produce great bodily injury. The majority then reason that the same finding would also have supported a conviction of assault by means of a force likely to produce great bodily injury—the third way of violating section 245(a)(1)—which would *not* have been error.

The majority's reasoning is premised on an unstated assumption, i.e., that (1) an *object used* in a way likely to produce great bodily injury and (2) a *force* likely to produce the same result are sufficiently equivalent to justify inferring that if the jury found one it would also have found the other. While this may not be true in every case, it is not an unreasonable assumption in the case at bar: Even though hands and feet are not objects extrinsic to the human body, their violent *use* in this case undoubtedly generated a *force* likely to produce great bodily injury.

With these understandings, I concur.

Kennard, J., concurred.