Filed 1/11/21  P. v. Carrasco CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B303248 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA121524) |
| v. | |
| RUBEN CARRASCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed with corrections.

Garen Nazarian, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

_____

Ruben Carrasco appeals the trial court's refusal to instruct the jury on simple assault, which is a misdemeanor. We affirm because there was no basis for this instruction: the evidence showed either aggravated assault or else no assault at all. We also correct the abstract of judgment. Statutory references are to the Penal Code.

## I

Although Carrasco did not testify to the July 2019 incident, three eyewitnesses did.

## A

Joseph Warren was in a parking lot that day. He heard a scream across the street and a woman telling a man to get away from her. The man, Carrasco, was pushing the woman's back. Other evidence would show the woman was Carrasco's wife, Estela Rios.

Warren saw Carrasco push Rios three times. The couple kept walking, and Warren went back to his work.

Warren then saw Rios come around the corner on his side of the street. She was crying. Carrasco was following her.

Rios put down the items she was carrying. Carrasco kicked them over. She cried for him to leave her alone. Carrasco punched her in the stomach three times or more. The punches seemed "pretty strong" to Warren. As Carrasco punched Rios, she continued to plead for him to leave her alone.

Carrasco held a metal "trash picker upper." He hit her legs twice with this stick. Carrasco swung the stick hard. Nothing slowed its momentum until the stick hit her leg.

Warren also saw Carrasco hit the woman on the back of her head, above and behind her ear. He could not tell if the blow was

with an open hand or a closed fist. It made her stumble. Warren said, "It looked aggressive. It looked pretty aggressive to me when he swung with some force behind it. It wasn't like a haymaker like how—just a crazy one, but it hit her in the head, and it was pretty strong, it seemed like."

Carrasco then grabbed her neck and slammed her against the window of an insurance building. Warren heard her hit the window. The force was hard enough that people rushed out from inside. Warren thought it could have possibly broken the window.

Warren heard the new people from inside the building ask "what's going on?" Carrasco fought one of them. Warren called 911. Rios was crying and trying to cover herself.

These events were directly in front of where Warren was working.

B

Abel Lujan testified next. He was working with Warren that day. He noticed Carrasco and Rios arguing across the street but "wasn't really focused" on them.

Lujan later noticed the couple screaming by the insurance building. "And then I just seen blows coming out." Carrasco was "throwing blows" at Rios with closed fists. Lujan initially did not remember where or how many times Carrasco hit her. After the prosecutor read Lujan's preliminary hearing testimony, Lujan recalled Carrasco hit the woman in her face. He estimated there were one to three blows.

Lujan initially did not remember Carrasco carrying a stick; then he recalled the "thing to pick up cans." But he did not remember Carrasco striking the woman with it.

3

Lujan acknowledged he may have testified previously Carrasco grabbed the woman by the neck and pushed her against the wall, but at trial he did not recall those events. The prosecutor then read Lujan's testimony from the preliminary hearing, where Lujan said Carrasco was "grabbing her by the neck, and then, like, kind of like pushing it, and I think it was up against the wall at one point, and then he had like a trash picker upper thing, you know, like one of the sticks. I think he was hitting her with it."

On recross, Lujan conceded he might have been confused about who was hitting whom with the stick.

On redirect, the prosecutor read testimony in which Lujan said he saw Carrasco with the stick in his hand when he was hitting Rios, but Lujan wasn't sure whether Carrasco was hitting her with the stick or with his fist. Lujan acknowledged his memory was better when he testified previously.

C

Rios testified she was pregnant at the time of the incident. Rios had a disagreement with Carrasco about a "personal family matter" that day, but it was not physical. He did not get angry or yell at her. He did not push or hit her. She was crying because of the personal matter, but never screamed.

Rios recounted how she and Carrasco crossed the street and went to a laundromat. Carrasco left to get change and, when he did not return after a couple of minutes, she stepped out and saw him in an altercation with another man. Rios tried to get her husband to leave. Then police came.

D

There was other evidence too.

The officer who detained Carrasco testified. This officer tried to get a statement from Rios, but she was argumentative and did not want to speak with him. She told the officer nothing happened and denied she had been assaulted. The officer asked if he could take pictures of her. But Rios "was uncooperative. She didn't want us to help her. She said she was not hurt." The officer saw no signs of injury.

The prosecution introduced the recording and transcript of Warren's 911 call reporting the incident. In this call, Warren states: "I see a guy that's punching a lady . . . [i]n like the face." Warren then describes the man fighting with workers from the insurance building, who "came out because he almost broke a window." He said the man was using a stick to hit them, which Warren described as "a green weapon."

The prosecution introduced the recording and transcript of a call between Carrasco and Rios when Carrasco was in jail for the July 2019 incident. In the call, Carrasco appears to be telling Rios not to say she knows whom he fought that day or else he's "fucked." He tells her, "You better not show up to my court." Then he blames her, saying, "All this is because of you." Rios responds, "No because you were hitting me." Carrasco then erupts, saying "Nuh, bitch there you go again motherfucker saying that shit on the phone again."

The prosecution also introduced evidence of past domestic violence by Carrasco against Rios. This evidence included the recording and transcript of a 911 call made from a liquor store in June 2019. Carrasco uses foul language with Rios: "Give me my fucking shit," "Fuck you ho," "Shut the fuck up ho," and "Go get me my motherfucking shit right now ho. This ain't no fucken game." He said, "I'm gonna knock you out ho."

The 911 call was transferred to the sheriff's department. Rios told the deputy "my boyfriend was hitting me." She identified her boyfriend as "Ruben Carrasco." She said Carrasco punched her "hard in my body." She also reported he choked her the day before and was arrested on Mother's Day "for doing the same thing."

E

The prosecution charged Carrasco with felony assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); contempt of court for violating a protective order and stay away order (§ 166, subd. (c)(1)); and resisting a peace officer (§ 148, subd. (a)(1)). The latter two counts were misdemeanors.

After the close of evidence, defense counsel twice requested an instruction on simple assault. The first request was a one-liner: counsel presented no argument or logic to support this request.

The court denied Carrasco's motion, reasoning it was all or nothing: if you believed Warren and Lujan, it was aggravated assault, but if you believed Rios, there was no assault at all. Carrasco did not dispute this analysis in the trial court.

Carrasco later renewed his motion for the simple assault instruction, saying that it was "supported by the evidence, at least according to the alleged victim in this case." The trial court responded by contrasting Rios's testimony, which maintained there was no physical contact and no threat of it, with the account of Warren and Lujan, who did report violent physical contact. The court again denied Carrasco's motion for the simple assault instruction. Carrasco's counsel again did not attempt to differ with the trial court's analysis.

After deliberating for just over an hour, the jury convicted Carrasco on all three counts.

The court sentenced Carrasco to the upper term of four years for the felony assault plus 364 days for each of the two misdemeanors. The misdemeanor terms were to run consecutively. The trial court said "the total sentence is six years in the state prison."

## II

A trial court must instruct on a lesser included offense if there is substantial evidence the defendant is guilty of the lesser offense but not the charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162, 177 (*Breverman*).) Substantial evidence is evidence from which reasonable jurors could conclude the defendant committed the lesser offense but not the greater. The evidence must be substantial in the sense that a reasonable jury could find it persuasive. (*People v. Valdez* (2004) 32 Cal.4th 73, 116.) It is error to instruct on a lesser included offense where the evidence makes clear the defendant, if guilty at all, could be guilty of only the greater offense. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 795–796.)

Our review is independent. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) In assessing the evidence, we eschew credibility determinations. (*Breverman*, *supra*, 19 Cal.4th at p. 162.)

An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (§ 240.) Simple assault is a lesser included offense of assault by means of force likely to produce great bodily injury. (*People v. Yeats* (1977) 66 Cal.App.3d 874, 879.) The difference is the

7

degree of force the defendant used.  (See *People v. McDaniel* (2008) 159 Cal.App.4th 736, 748 (*McDaniel*).)

Great bodily injury is significant or substantial injury, not trivial, insignificant, or moderate injury.  (*McDaniel*, *supra*, 159 Cal.App.4th at p. 748; see also CALCRIM No. 875 [great bodily injury is an injury greater than minor or moderate harm].)  It may be committed with hands or fists.  (*McDaniel*, at p. 748.)  One blow to the face can suffice.  (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1161–1162.)

## III

The trial court's ruling was proper.  The trial court rightly explained this case was either all or nothing.  It was either assault by means of force likely to produce great bodily injury, as Warren and Lujan testified, or no assault, as Rios claimed.  Between these two versions, there was no middle ground.  There was no evidence of simple assault.  There was no warrant for a simple assault instruction.

Warren left no doubt about the high degree of force Carrasco used against his then-pregnant wife.  Carrasco struck her stomach three times or more with "pretty strong" punches.  He hit her legs with a metal stick twice; he was swinging hard.  Then he struck the back of her head and made her stumble.  Next he grabbed her by the neck and slammed her into a window with enough force it seemed the window might break.

We emphasize the stumble.  Stumbling after a blow to the back of the head creates the risk of a fall.  Rios was stumbling on hard surfaces:  streets and sidewalks.  Falling on an outstretched hand or on your head can cause a significant injury.  These risks thus are significant.

8

This evidence showed a degree of force and risk of injury that was not trivial, insignificant, or moderate.

Lujan's testimony was consistent with Warren's. Lujan observed the conflict less closely than did Warren, true, and Lujan's memory was less detailed than Warren's. Nevertheless, Lujan corroborated Warren.

Carrasco says Lujan and Warren testified inconsistently about whether Carrasco struck Rios with the trash grabber device. But even without this fact, the evidence shows nothing short of an assault by means of force likely to produce great bodily injury.

The only other eyewitness was Rios herself, who denied there was anything beyond a verbal disagreement between her and her husband. That is not evidence of simple assault because, according to Rios, Carrasco made no attempt to injure her violently.

Carrasco argues Rios reported no physical injury. This factor is not decisive. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.) What matters is the force used and whether it would be *likely* to cause great bodily injury. (*Id.* at p. 1036, fn. 9.) The issue is *risk*, not whether the risk came to pass.

Carrasco maintains a fist attack is not per se likely to cause great bodily injury. That is so. But the trial court did not analyze this case as a per se or categorical matter. It grappled with the facts of this case. On the facts of this case, there was no evidence of simple assault.

Carrasco cites *Breverman*, which held a trial court must instruct fully on all lesser necessarily included offenses supported by the evidence. (*Breverman*, *supra*, 19 Cal.4th at pp. 148–149.)

9

The trial court rightly ruled, however, the evidence did not support a charge of simple assault in this case.

IV

We order corrections to the abstract of judgment.

The report of the sentence is incorrect. Apart from the felony assault, Carrasco was convicted of and sentenced for two misdemeanors: contempt of court and resisting a peace officer. The trial court's minute order and the reporter's transcript make clear the court imposed consecutive sentences of 364 days for each of the two misdemeanors, plus four years for the felony. However, the abstract of judgment incorrectly reflects *concurrent* sentences, for a mistaken total term of four years.

The People ask us to order a correction to the abstract of judgment to reflect the trial court's oral pronouncement of Carrasco's sentences, which governs. We do so, as the abstract is erroneous and Carrasco does not dispute the point. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188 [oral judgment governs; if different, abstract of judgment should be corrected].)

We also order the trial court to correct a two-day discrepancy in Carrasco's favor. The trial court sentenced Carrasco to four years on the felony and 364 days on each of the two misdemeanors. The trial court referred to these consecutive sentences as totaling "six years in the state prison." This abbreviated shorthand of "six years" is inaccurate by two days: each misdemeanor sentence is 364 days, not 365 days. Nevertheless, the court's shorthand is clear. We therefore direct the trial court to correct the abstract to state Carrasco's total custodial term is four years plus 364 days plus 364 days, which is five years and 363 days.

10

We also note the abstract incorrectly states Carrasco's conviction resulted from a plea of guilty rather than from a jury verdict. This also must be corrected: a jury convicted Carrasco.

**DISPOSITION**

The judgment is affirmed. We direct the sentencing court to correct the abstract of judgment to reflect three consecutive sentences for a total custodial term of five years and 363 days. The court also must order the abstract corrected to show a conviction by jury verdict. We further direct the court to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

WILEY, J.

We concur:

BIGELOW, P. J.

GRIMES, J.

11