Filed 11/6/14  P. v. Hinojosa CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059261 |
| v. | (Super.Ct.No. RIF1203474) |
| SACRAMENTO SANDOVAL HINOJOSA, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey Prevost, Judge.

Affirmed.

Paul Stubb Jr., under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, and

Alastair J. Agcaoili, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

On May 20, 2013, a second amended information charged defendant and appellant with assault with force likely to produce great bodily injury under Penal Code[1] section 245, subdivision (a)(4) (count 1); and making a criminal threat under section 422 (count 2). A jury found defendant guilty on count 1 and not guilty on count 2. The trial court sentenced defendant to three years in county jail, suspending one year of the sentence in favor of mandatory supervision.

On appeal, defendant contends that the trial court prejudicially erred in failing to instruct the jury on misdemeanor assault. For the reasons set forth below, we shall affirm the judgment.

# II

## STATEMENT OF FACTS

On July 23, 2012, Patricia Palmas (the victim) received an unsolicited text message that included a photograph of her and defendant having sex in defendant's apartment. The victim had previously dated defendant for about a year; she had ended the relationship in January 2012 because he had become aggressive, violent, and threatening to the victim and her children. After the victim ended the relationship, defendant continued threatening the victim. He stated that he would go to the victim's house and "do things to [her] kids . . . or post pictures . . . of [the two of them] on the

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

internet." The victim was not aware that defendant had taken photographs of the two of them having sex. Moreover, she never gave defendant permission to take such photos.

After receiving the text message, the victim called defendant and asked him to delete the photograph. Defendant did not want to discuss the photograph over the phone; the victim agreed to meet him in the parking lot of Food 4 Less, a supermarket in Riverside. The victim chose the public parking lot as a meeting place because she knew defendant was "aggressive and violent." When the two met, defendant denied sending the photograph. He, however, also told the victim that he had many things he could use against her. The victim was embarrassed about the photograph and "desperate" to prevent its further publication. When defendant left the parking lot and they had not resolved the situation, the victim called him back and asked to meet again. She wanted to "beg him" to turn over whatever embarrassing material he had of her, and to leave her and her family alone.

Later that night, defendant and the victim met again in the parking lot of Stater Bros., another local supermarket. It was dark outside and the parking lot was dimly lit. Defendant entered the victim's car and sat in the passenger's seat while the victim sat in the driver's seat. Defendant again denied sending the photograph to the victim, but also said, "I have other photos. I have other proofs." The victim asked defendant to leave her alone. Defendant responded, "I'm not going to leave you alone. I'm not going to let you be happy at all."

At that point, defendant reached across the vehicle and grabbed the victim's neck with one of his hands. Defendant applied "a lot of pressure" on the victim's throat; she

3

could not breathe. At the same time, defendant pushed the victim's head backwards against her seat. With defendant's fingers wrapped around her throat, the victim could not speak or cry out for help. She stated, "I felt like . . . he could have killed me there."

Defendant held the victim in this chokehold for what felt like "a long time." With his fingers still around her throat, he also stabbed her multiple times in the right shoulder with a pen. The blows to her shoulder were "really hard," and caused the victim pain. As defendant stabbed the victim, his grip on her neck loosened, and the victim cried out that she was going to call the police. She began to struggle with defendant. He then jumped out of the car. As he fled, he stated, "You're going to hear from me. I'm going to hurt your kids. I'm going to kill you."

Defendant's attack left several visible abrasions and red marks on the victim's neck and throat. Moreover, the victim suffered several puncture wounds to her right shoulder in the area where defendant had stabbed her. The attack also left a large bruise on the same shoulder that lasted for several months. The victim's blouse was torn around the chest area, and several of its buttons were ripped off during the struggle. Riverside Police Officer Michael Foster testified that when he responded to the scene, the victim was trembling and crying. Detective Michael O'Boyle met with the victim the day after the attack and further documented her injuries.

Subsequently, an officer arrested defendant during an investigatory vehicle stop. During the stop, defendant was nervous. He gave a false name to the investigating officer. The officer ran defendant's thumbprint through a police database and discovered that defendant was subject to a felony arrest warrant for his attack on the victim.

4

# III

# ANALYSIS

Defendant contends that the trial court erred in failing to instruct the jury on misdemeanor assault because substantial evidence showed that defendant's "acts were unlikely to produce great bodily injury." In response, the People argue the evidence did not support the giving of instructions on the lesser included offense and, even if the evidence did require an instruction on the lesser included offense, the court's failure to give the instruction was harmless under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

We conclude there is no substantial evidence from which a jury composed of reasonable persons could find that defendant was guilty of the lesser included offense of simple assault but not guilty of the corresponding greater offense of assault with force likely to produce great bodily injury. Thus, the court had no duty to sua sponte instruct the jury on the elements of the lesser included offense. We further conclude that even if the court had erred in failing to instruct the jury on the lesser included offense, any such error was harmless under the applicable *Watson* test.

A. *The Trial Court Properly Instructed the Jury*

On appeal, we review de novo whether jury instructions on lesser included offenses are warranted by the evidence at trial. (*People v. Avila* (2009) 46 Cal.4th 680, 705, citing *People v. Cole* (2004) 33 Cal.4th 1158, 1215.)

"The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal

request."  (*People v. Blair* (2005) 36 Cal.4th 686, 744.)  "That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser."  (*Id.* at p. 745.)

"To justify a lesser included offense instruction, the evidence supporting the instruction must be *substantial* — that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist."  (*Blair, supra,* 36 Cal.4th at p. 745, italics added.)  Stated differently, "substantial evidence" in this context is evidence from which a jury composed of reasonable persons could conclude the defendant committed the lesser offense but not the greater.  (*People v. Breverman* (1998) 19 Cal.4th 142, 162; see also *People v. Moye* (2009) 47 Cal.4th 537, 556 ["'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.'"].)  "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ."  (*Breverman,* at p. 162, original italics; see also *Moye,* at p. 553.)

Misdemeanor assault under section 240 is a lesser included offense of assault with force likely to produce great bodily injury under section 245, subdivision (a)(4).  (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748, citing *People v. Yeats* (1977) 66 Cal.App.3d 874, 879.)  Misdemeanor assault, the lesser offense, is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  (§ 240.)  Assault with force likely to produce great bodily injury, the greater offense, is an assault executed with force capable of causing "significant or substantial injury."

6

(*People v. Brown* (2012) 210 Cal.App.4th 1, 7.) For purposes of the greater offense, it is immaterial "whether the victim in fact suffers any harm." (*People Aguilar* (1997) 16 Cal.4th 1023, 1028.) Physical injuries, however, are "highly probative" of the amount of force used. (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065-1066.)

In this case, the court did not instruct the jury on the elements of simple assault, and the jury convicted defendant of assault with force likely to produce great bodily injury. Thus, the question presented by defendant's instructional error claim is whether there is substantial evidence from which a reasonable jury could find he committed only a simple assault and not an assault by means of force likely to produce great bodily injury. If the trial record contains no such evidence, the court had no duty to sua sponte instruct the jury on the elements of simple assault as a lesser included offense of aggravated assault. (See *Blair, supra,* 36 Cal.4th at pp. 744-745.)

It is well-established that the use of hands or fists may support a conviction of assault by means of force likely to produce great bodily injury. (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028 & cases cited therein.) Whether such force "would be likely to cause great bodily injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied." (*McDaniel, supra,* 159 Cal.App.4th at pp. 748-749, citing *People v. Kinman* (1955) 134 Cal.App.2d 419, 422.) Although not conclusive, the results of an assault are highly probative of the amount of force used. (*McDaniel,* at p. 748, citing *People v. Muir* (1966) 244 Cal.App.2d 598, 604.)

7

Here, an instruction on simple assault was not warranted. The court had no duty to give such an instruction sua sponte because there is no substantial evidence from which a jury composed of reasonable persons could conclude that the force defendant used in assaulting the victim was less than force likely to produce great bodily injury. Defendant grabbed the victim's neck, pushed her head backwards against her seat, and strangled her until she could not breathe. Defendant held the victim in this position for a "long time," applying "a lot of pressure" on her throat and preventing her from calling for help. As defendant held the victim against the seat, he also stabbed the victim multiple times in the shoulder with a pen, tearing her blouse and breaking the skin where the pen contacted her body. The assault left visible abrasions and red marks around the victim's neck and throat, as well as several puncture wounds on her shoulder and a large bruise in the same area that lasted several months. The victim stated that it felt as if victim could have killed her with the amount of force he used to strangle her.

Notwithstanding the evidence, defendant argues that "there was substantial evidence from which a reasonable jury could have concluded that [defendant's] acts were unlikely to produce great bodily injury." In support, defendant points to the victim's testimony that defendant "used one hand to squeeze her neck and poked her with a pen." Moreover, defendant points to the testimony of two officers to challenge the victim's credibility about the extent of her injuries caused by defendant. As stated above, a trial court must instruct the jury sua sponte on any lesser included offenses supported by substantial evidence. (*People v. Parson* (2008) 44 Cal.4th 332, 348-349.) In this context, substantial evidence is evidence from which a reasonable jury could conclude that "'the

8

lesser offense, but not the greater, was committed.'" (*People v. Avila*, *supra*, 46 Cal.4th at p. 705, quoting *People v. Cruz* (2008) 44 Cal.4th 636, 664.) In applying this standard, however, appellate courts determine only the "bare legal sufficiency" of the evidence, not its weight. (*Moye*, *supra*, 47 Cal.4th at p. 556.) Moreover, appellate courts should not dismiss testimony based on its own independent determinations of witness credibility. (*People v. Wyatt* (2012) 55 Cal.4th 694, 698, citing *Breverman*, *supra*, 19 Cal.4th at p. 162.)

Based on the evidence provided above, we find that the evidence overwhelmingly shows that defendant forcefully grabbed the victim's neck, pushed her head back against the car seat and strangled her to the point where she could not breathe. The victim testified, "It felt terrible. I felt like that he could have killed me there. I couldn't breathe[,]" and "I wasn't able to talk." Given the nature of the attack on the victim, no reasonable juror could find that the force defendant used on the victim was less than force likely to produce great bodily injury, and thus no reasonable jury could find that defendant committed only a simple assault and not an aggravated assault.

For the foregoing reasons, we conclude the court did not err by failing to sua sponte give an instruction on the elements of simple assault as a lesser included offense of assault by means likely to produce great bodily injury.

Assuming arguendo that it was error for the court to fail sua sponte to instruct the jury on the lesser included offense of simple assault, the People urge us to find that such error was harmless under the *Watson* test for prejudice (*Watson, supra,* 46 Cal.2d at p. 836), which the California Supreme Court made applicable to instructional errors of this

9

sort in noncapital cases in *Breverman, supra,* 19 Cal.4th at pages 177-178.  (See *Moye, supra,* 47 Cal.4th at p. 555.)

Under the *Watson* test, an error in failing sua sponte to instruct on a lesser included offense requires reversal of the conviction for the greater offense "if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman, supra,* 19 Cal.4th at p. 178.)  Probability under *Watson* "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 918.)

*Breverman* explained that appellate review under *Watson* "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.  In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Breverman, supra,* 19 Cal.4th at p. 177, original italics.)

Even if the court erred by failing sua sponte to instruct on the lesser included offenses of simple assault, any such error was harmless under the *Watson* test as it is not reasonably probable (i.e., there is not a reasonable chance) defendant would have obtained a more favorable outcome had the jury been so instructed.  (*Breverman, supra,* 19 Cal.4th at p. 178; *Ghilotti, supra,* 27 Cal.4th at p. 918.)  We have already concluded that in light of the overwhelming evidence regarding the manner in which defendant

10

assaulted the victim, no reasonable juror could find that the force defendant used on her was less than force likely to produce great bodily injury.

After reviewing the entire cause, including the evidence, we also conclude it is not reasonably probable that defendant would have obtained a more favorable result if the court sua sponte had instructed the jury on the elements of simple assault as a lesser included offense of assault by means likely to produce great bodily injury. The evidence supporting defendant's conviction for aggravated assault is strong, and the evidence supporting a different outcome is so weak—to the point of being virtually nonexistent— that there is no reasonable probability the instructional error of which defendant complains affected the result.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

11