Filed 9/27/16  P. v. Bell CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051964 |
| v. | (Super. Ct. No. 12NF0152) |
| RICKY LAMONT BELL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed with directions.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Alana C. Butler and Stephanie H. Chow, for Plaintiff and Respondent.

\*         \*         \*

A jury convicted Ricky Lamont Bell of battery with serious bodily injury (Pen. Code, § 243, subd. (d) [count 1]; all citations are to the Penal Code unless noted), assault by means of force likely to cause great bodily injury (former § 245, subd. (a)(1) [count 2]) [1], and found he inflicted great bodily injury (§ 12022.7 [as to count 2]). He contends the trial court erred by allowing the prosecution to file an amended information adding the aggravated assault charge and great bodily injury allegation on the day of trial. He also argues the evidence is insufficient to sustain the conviction for assault by means of force likely to cause great bodily injury. Finding no basis to overturn the judgment, we affirm, but we will direct the court to modify its minutes to reflect Bell suffered a conviction for a violation of section 245, subdivision (a)(4), rather than section 245, subdivision (a)(1).

I

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of December 24, 2011, Shahab Eghterafi exited a busy Anaheim Wal-Mart store after completing his shopping. He noticed Bell walking hurriedly toward him with a young girl in tow. Bell appeared angry or unhappy. Bell stopped in front of Eghterafi. As the men stood nose-to-nose, Bell said, "Are you fucking blind?" Frightened, Eghterafi did not respond. Bell took a step back, then punched Eghterafi in the face, knocking Eghterafi to the ground. When Eghterafi regained his senses, Bell stood over him, his right hand in a fist, and said, "Do you want fucking more?" Eghterafi responded, "No. It's okay, sir."

---

[1] The amended information charged Bell under subdivision (a)(1), and the verdict forms, court minutes, and abstract of judgment refer to that subdivision. The amended information and jury instructions described and defined the offense as "an assault . . . by means of force likely to produce great bodily injury." (CALCRIM No. 875) Because a future reader of Bell's record might conclude a deadly weapon was involved in the 2015 conviction, we will direct the court to modify its minutes to reflect Bell was convicted of violating subdivision (a)(4).

2

Eghterafi suffered a fractured jaw and required surgery to wire his mouth closed. He could not eat solid food and had difficulty speaking for about a month, and lost approximately 15 pounds.

Eghterafi told a 911 dispatcher and a police officer he accidentally bumped into Bell while walking and looking down. They yelled at each other, and Bell punched him. He did not tell the officer Bell stood over him and asked if he wanted more.

Bell testified he went to the store with his seven-year-old niece to buy cereal and milk. Eghterafi stopped in front of Bell on the sidewalk and Bell said, "excuse me" twice. Eghterafi gave him an odd look and said something loudly in a language Bell did not understand. Eghterafi clenched his fists. Eghterafi was taller and heavier than Bell, and the latter felt afraid for himself and his niece. Eghterafi lunged toward Bell, who responded by stepping back and swinging, striking Eghterafi on the left side of his jaw. Bell took hold of his niece and walked away.

Bell told a police officer Eghterafi and he bumped into each other, Eghterafi started screaming in another language, got within inches of his face, and chest bumped him. Bell told the officer he head-butted Eghterafi to defend himself. He initially denied punching Eghterafi, but later said "I guess I must have punched him. It kind of happened real fast." Bell did not tell the officer Eghterafi lunged toward him.

Following trial in April 2015, the jury convicted Bell of the charged offenses. The court found three prior prison term enhancement allegations to be true (§ 667.5, subd. (b)). In May 2015, the court sentenced Bell to a six-year prison sentence, comprised of the three-year midterm for aggravated assault and a three-year great bodily injury enhancement. The court stayed (§ 654) a term for battery with serious bodily injury, and struck the prison term enhancements.

DISCUSSION

A.    *The Trial Court Did Not Abuse Its Discretion by Allowing the Prosecution to File an Amended Information*

Bell contends the trial court erred in allowing the prosecution to file an amended information on the first day of trial that added a charge of assault by means of force likely to cause great bodily injury, and a great bodily injury enhancement.  He asserts the "last second amendment . . . should not have been approved" because the "resulting sentencing was quite prejudicial to [Bell], resulting in a sentence of 6 years on the new count plus enhancement that should have been only 3 years based on the original count.  [Bell] was also put to proof in a different manner than anticipated.  The added count also affects the percentage of time one can earn as credit in prison.  Finally, it creates a judgment containing two potential strikes instead of just one."

The information filed in February 2015[2] charged Bell with violating section 243, subdivision (d), which in December 2011 provided, "When a battery is committed against any person and serious bodily injury is inflicted on the person, the battery is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years."  (See § 242 [battery defined as willful and unlawful use of force or violence upon the person of another].)

On the first day of trial in March 2015, the prosecution moved to file an amended information.  The new pleading proposed to add a count for assault by means of force likely to produce great bodily injury (former § 245, subd. (a)(1); see § 245, subd. (a)(4)), and a great bodily injury enhancement (§ 12022.7).  Defense counsel objected the amended pleading was untimely.  Counsel noted there were no new facts supporting the

---

²    The complaint was filed in January 2012, but Bell was not arrested until November 2014.

4

new charges and the amendment made "the case far more serious" by adding a "potential three years to any sentence if he is convicted, and . . . changes the amount of time that he would serve from 50 percent to 85 percent." Counsel also noted the amendment changed the "case from being a one strike case to a two strike case . . . ."

The court allowed the amendment. It noted an information may be amended at any time so long as "whatever is being added was covered at the preliminary hearing . . . ." The court stated the proposed aggravated assault offense and great bodily injury enhancement were "closely related" to the pending charge of battery with serious bodily injury. The court found no prejudice, noting the defense had notice of "the same subject matter, the bodily injury." The court stated "it's very rare when anything gets amended that it doesn't add any exposure [i.e., punitive consequences]." The court offered to grant the defense a reasonable continuance, but defense counsel stated he was "not requesting any additional time because there is no new evidence or no new facts."

Section 1009 provides in relevant part, "The court in which an action is pending may order or permit an amendment of an . . . information, . . . for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if the defendant has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination."

5

Bell does not assert the amendment charged an offense not shown by the evidence at the preliminary examination. He agrees amendments are "generally permitted," but asserts "when an amendment is proposed at the last minute, and it substantially changes the charges such as adding or substituting different offenses, either the trial must be delayed to give the defense an opportunity to prepare or the amendment must be denied." He states the offense added in this case is "different and thus the potential defenses are different" because an aggravated battery focuses on the seriousness of the *result*, while aggravated assault focuses on the seriousness of the *attack*. He explains: "Here we had a single punch. While that may, in rare circumstances such as here, result in serious injury, it is certainly not likely to do so. Jurors may be persuaded to find a [section] 245 violation where they see there was in fact a serious injury but, if sufficient evidence is planned and produced on the subject of the *likelihood* of a serious injury resulting from a single punch, a jury composed of average people may well see their way to reducing the influence on their thinking of the actual result and focus more narrowly on probabilities, as they should. Counsel had no incentive at all during trial preparation to address with witnesses the likelihood of serious injury because the sole charge that existed until the beginning of trial did not involve that issue."

Here, trial counsel agreed the amendment was "just an alternate way of charging the case," and there was "no new evidence or no new facts." He did not claim "surprise" or lack of preparation, and expressly declined a postponement of the trial. He did not indicate a need to "shift emphasis to expert evidence and other similar evidence." The cases relied on by Bell are therefore distinguishable. (See *People v. Murphy* (1963) 59 Cal.2d 818, 824 [amendment changed identity of alleged accomplice in statutory rape and court denied request for continuance]; *People v. Hembree* (1956) 143 Cal.App.2d 733, 743 [defendant denied fair trial where amendment abandoned original charge and substituted two different offenses with additional factual and legal issues, and trial court required the defense to proceed with trial immediately; trial court erred in refusing to

6

grant a reasonable continuance].)  Bell cites no authority reflecting the court must deny an amendment simply because it "ups the ante considerably due to the possibility of greatly increased punishment . . . ."[3]

B.    *Substantial Evidence Supports Conviction for Assault by Means of Force Likely to Cause Great Bodily Injury*

Bell also argues the evidence falls short of that necessary to sustain a conviction for assault by means of force likely to cause great bodily injury.  Again, we disagree.

On appeal, we must view the record in the light most favorable to the judgment below.  (*People v. Elliot* (2005) 37 Cal.4th 453, 466.)  The test is whether substantial evidence supports the verdict (*Jackson v. Virginia* (1979) 443 U.S. 307, 318; *People v. Johnson* (1980) 26 Cal.3d 557, 577-578), not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139 (*Crittenden*).)  It is the jury's exclusive province to weigh the evidence, assess the credibility of the witnesses, and resolve conflicts in the testimony. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 (*Sanchez*).)  Accordingly, we must presume in support of the judgment the existence of facts reasonably drawn by inference from the evidence.  (*Crittenden*, at p. 139; see *People v. Stanley* (1995) 10 Cal.4th 764, 792 [same deferential standard of review applies to circumstantial evidence].)  The fact that circumstances can be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.)  Consequently, an appellant "bears an enormous burden" in challenging the sufficiency of the evidence. (*Sanchez*, at p. 330.)

---

[3]    Bell's concern "a claim might be made in a future case that Penal Code §667(a)(4) applies and this case presents two strikes" is misplaced.  (See *People v. Vargas* (2014) 59 Cal.4th 635, 637 [two prior convictions arising out of a single act against a single victim cannot constitute two strikes under the Three Strikes law].)

When Bell assaulted Eghterafi in December 2011, section 245, subdivision (a)(1), provided, "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm *or by any means of force likely to produce great bodily injury* shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine not to exceed ten thousand dollars ($10,000), or by both the fine and imprisonment." Effective in January 2012, the statute was amended so that the great bodily injury provision now is contained in subdivision (a)(4). (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1026 (2011-2012 Reg. Sess.) as introduced Apr. 26, 2011 [purpose of change was to permit a more efficient assessment of a defendant's prior criminal history since an assault with a deadly weapon qualifies as a "'serious felony'" under § 1192.7, subd. (c)(1) while an assault by force likely to produce great bodily injury does not].)

It is well established "that the use of hands or fists alone may support a conviction of assault 'by means of force likely to produce great bodily injury.'" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066; see *People v. Duke* (1985) 174 Cal.App.3d 296, 302-303 (*Duke*) [when hands, fists and feet are employed in an assault, normally the charge will be assault with force likely to produce great bodily injury].) "What force is likely to produce great bodily injury is a question of fact to be determined by the jury. [Citation.] [¶] 'Whether a fist would be likely to produce such injury is to be determined by the force of the impact, the manner in which it was used and the circumstances under which the force was applied.' [Citation.]" (*People v. Kinman* (1955) 134 Cal.App.2d 419, 422.) A single punch to the jaw may support a finding of assault by means of force likely to produce great bodily injury. (*In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1159, 1161-1162 [minor knocked victim down with a single blow on left side of her face, causing her injuries to be treated at a hospital for four to five hours, and two months later her teeth still did not meet].)

Bell cites several cases affirming aggravated assault convictions where the defendant inflicted multiple blows with the hands or feet and states, "We can take away from these cases that supporting a subsection (a)(4) conviction based only on a single punch is really skating on thin ice. It may be theoretically possible, perhaps, but it doesn't seem to occur in the real world." He characterizes his offense as not a "serious" attack or assault but more like a "garden variety . . . minor attempt[] by [an] irritated human[] . . . , such as a swing and a miss with a fist, or throwing a pencil at someone." He also says, "Here we had a single punch. While that may, in rare circumstances such as here, result in serious injury, it is certainly not likely to do so."

Bell's argument is unpersuasive, to say the least. Bell generated enough force with his blow to break the victim's jaw. Based on the force of the blow and its consequences to the victim, the jury reasonably could conclude Bell used force likely to cause great bodily injury. Bell's reliance on cases such as *Duke*, *supra*, 174 Cal.App.3d 296, is misplaced. There, the defendant used a headlock to hold his victim so he could touch her breast. The court concluded a reasonable jury could not find beyond a reasonable doubt the headlock constituted force likely to produce great bodily injury because the defendant grabbed the victim only momentarily, released her almost immediately, and she was in no danger from the force used. (*Ibid.*; cf. *People v. Covino* (1980) 100 Cal.App.3d 660, 66--665 [choking victim with both hands with the defendant's thumbs on the victim's larynx entailed sufficient force to support conviction].) Bell may have only thrown a single punch, but the force he employed produced great bodily injury. Substantial evidence supports the conviction.

III

DISPOSITION

The judgment is affirmed. The trial court is directed to modify its minutes to reflect Bell suffered a conviction for a violation of subdivision (a)(4) rather than

9

subdivision (a)(1) of section 245. The court is directed to prepare an amended abstract of judgment and to send a certified copy to the Department of Corrections and Rehabilitation.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

10