Filed 2/26/24  P. v. Bosch CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BOSCH,<br><br>    Defendant and Appellant. | 2d Crim. No. B322840<br>(Super. Ct. No. 21CR05874)<br>(Santa Barbara County) |

Michael Bosch appeals from the judgment after a jury found him guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1), count 1) and two counts of assault by means of force likely to produce great bodily injury (force likely assault, § 245, subd. (a)(4), counts 2 and 3).  The jury found true enhancements for inflicting great bodily injury on all three counts.  (§ 12022.7, subd. (a).)  The trial court sentenced him to seven years in state prison.

---

[1] All statutory references are to the Penal Code.

Bosch contends he did not knowingly and intelligently waive his right to counsel, the trial court erred in not appointing counsel, and a hiking boot is not a deadly weapon. The parties agree Bosch was improperly convicted of both assault with a deadly weapon and force likely assault based on the same act for counts 1 and 2. We order the judgment modified to consolidate these counts and in all other respects affirm.

FACTUAL AND PROCEDURAL HISTORY

Bosch was charged in count 1 with assault with a deadly weapon, i.e., a boot, on Hermilio A. Count 2 charged the same acts as force likely assault. Count 3 charged a separate incident of force likely assault against Serena S.

*Counts 1 and 2*

Hermilio A., age 75, planned to urinate near a wastewater treatment plant when Bosch grabbed him from behind and threw him to the ground. His head hit the cement. Bosch "kicked [Hermilio A.] in the head a couple of times" and "stomp[ed] his head in the ground." Bosch "literally tried to bust [his] head open." Hermilio A. was diagnosed with a subdural hematoma (brain bleed) and remained in the hospital for three days.

*Count 3*

Serena S., approximately 52 years old, asked Bosch for a cigarette. Bosch grabbed her and punched her repeatedly in the face. She did not fight back. When she fell to the ground, he kicked her in the face and head. She lost consciousness and bled from her nose and face. She was taken to the hospital with a head injury, bruised scalp, and broken nose. Bosch told police he hit Serena S. in the face 15 or 16 times, then kicked her in the face or head with the goal of knocking her unconscious.

2

*Waiver of counsel*

Before the preliminary examination, Bosch moved to represent himself.  He completed a four-page *Faretta*[2] waiver form in which he acknowledged his constitutional rights and the "DANGERS AND DISADVANTAGES OF SELF-REPRESENTATION."  (A copy of the form is appended to this opinion as Attachment A.)  On the form, Bosch stated that he graduated high school, completed two semesters at the University of Vienna, had no legal education, and had never previously represented himself.  He acknowledged the right to be represented by an attorney, including a court-appointed attorney at no cost.  He also acknowledged that if he represented himself, he would be provided "no more access to legal research or legal information than any other inmate who acts as his own attorney, and that access is limited"; the trial would not be continued without good cause; "the case against [him] will be handled by a prosecutor who is an experience[d] trial attorney"; Bosch would not "receive any special consideration or assistance from the Court"; and he would be required, "WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY, to follow all of the requirements of the criminal law, criminal procedure, law of evidence, and rules of court."

The waiver form also outlined various stages of the trial Bosch would need to conduct if he represented himself.  Bosch acknowledged "the advice and recommendation of [the] Court that [he] . . . not act as [his] own attorney and that [he] accept a court-appointed attorney."  He signed the form directly below the statement, "I hereby certify that I have read, understood and

---

[2] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

3

considered all of the above warnings."

Bosch appeared on the felony complaint with a deputy public defender before Judge Vernon K. Nakahara. The court confirmed that Bosch had read the waiver form. The court told Bosch that self-representation was "not a good idea," was not "the right decision for you," and "would be against your self interest." The court warned Bosch he was charged with "serious offenses" and was "going up against a very experienced DA."

The court asked, "Do you know the dangers and disadvantages of self-representation?" Bosch replied, "Which would be?" The court responded that Bosch was untrained in the law, and warned that he would be required to follow the rules of the court and decorum and "understand the various steps in the trial."

Bosch persisted in representing himself and declined the court's invitation to confer with the public defender. The court asked Bosch if he was "of sound mind." He responded that he was. He said he was not under the influence of alcohol or drugs. The court granted the motion for self-representation.

*Pretrial proceedings in the trial court*

Bosch appeared for arraignment on the information before Judge Brian E. Hill, who presided over the jury trial. Bosch insisted on representing himself. He acknowledged previously reading the information and declined the court's offer to read it aloud. He also acknowledged receiving jury instructions that "set forth the elements that have to be satisfied beyond a reasonable doubt."

The court stated that Bosch was "talking about some things that didn't make a lot of sense," such as things he wanted the court to do. The court raised "a question" about Bosch's

4

competence to represent himself. The court appointed clinical psychologist James S. Angelos, Ph.D., to examine Bosch's competence to represent himself. Dr. Angelos's report concluded that Bosch "should not proceed without a lawyer" because Bosch's belief he had "enough legal expertise to defend himself" was "a serious error of judgment."

The court then suspended criminal proceedings and appointed clinical psychologists Carolyn Murphy, Ph.D., and James A. Tahmisian, Ph.D., to examine whether Bosch was competent to stand trial. Based on their reports, which were written more than three months after Dr. Angelo's report, the court found Bosch competent to stand trial.

At four later hearings, Bosch confirmed he wanted to represent himself. On the day set for trial, the court advised Bosch he could still change his mind about representing himself, but that once the trial began, it would be too late. The court gave Bosch a copy of the second amended information and read it to him. Bosch acknowledged he had seen it before. He also acknowledged he was aware of the prosecution's settlement offer of seven years in prison. The prosecutor stated the minimum sentence was five years and the maximum sentence was 13 years.

*Trial and sentencing*

At trial, Bosch made an opening statement, cross-examined witnesses, and gave a closing argument. The jury found him guilty of all charges and found true the great bodily injury allegations.

The court sentenced Bosch to the midterm of three years in prison for count 1 plus a three-year enhancement for infliction of great bodily injury. Pursuant to section 654, the court stayed a three-year sentence and three-year great bodily injury

5

enhancement for count 2.  For count 3, the court imposed one year consecutive and stayed the great bodily injury enhancement in the interest of justice.

ARGUMENT

Faretta *waiver*

Bosch concedes his waiver of counsel was voluntary but contends it was invalid because it was not knowing and intelligent. We are not persuaded.

Criminal defendants have a Sixth Amendment right to conduct their own defense if they knowingly and intelligently waive the right to the assistance of counsel.  (*Faretta, supra*, 422 U.S. at pp. 821, 835.)  "The requirements for a valid waiver of the right to counsel are (1) a determination that the accused is competent to waive the right, i.e., he or she has the mental capacity to understand the nature and object of the proceedings against him or her; and (2) a finding that the waiver is knowing and voluntary, i.e., the accused understands the significance and consequences of the decision and makes it without coercion." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1069-1070 (*Koontz*).)

"On appeal, we independently examine the entire record to determine whether the defendant knowingly and intelligently waived the right to counsel."  (*People v. Burgener* (2009) 46 Cal.4th 231, 241.)  " 'The burden is on the defendant to demonstrate he did not knowingly and intelligently waive his right to counsel.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 547, italics omitted.)

A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation]." (*Faretta, supra*,

6

422 U.S. at p. 835.) " 'No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation.' [Citation.] Rather, 'the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' " (*People v. Blair* (2005) 36 Cal.4th 686, 708.)

"Generally, a defendant should be told that 'self-representation is almost always unwise and that the defense he conducts might be to his detriment; he will have to follow the same rules that govern attorneys; the prosecution will be represented by experienced, professional counsel who will have a significant advantage over him in terms of skill, training, education, experience, and ability; the court may terminate his right to represent himself if he engages in disruptive conduct; and he will lose the right to appeal his case on the grounds of ineffective assistance of counsel. [Citation.] In addition, he should also be told he will receive no help or special treatment from the court and that he does not have a right to standby, advisory, or cocounsel.' " (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1057-1058; *Koontz*, *supra*, 27 Cal.4th at pp. 1070-1071.)

In addition, the court should advise that "the defendant will receive no more library privileges than those available to any other self-represented defendant, or any additional time to prepare." (*Koontz*, *supra*, 27 Cal.4th at p. 1071.) It is recommended that the court "inquire into the defendant's education and familiarity with legal procedures, . . . prob[e] the defendant's understanding of the alternative to self-representation, i.e., the right to counsel, including court-appointed counsel at no cost to the defendant, and explor[e] the nature of the proceedings, potential defenses and

7

potential punishments." (*Ibid*.)

We conclude that Bosch knowingly and intelligently waived his right to counsel. Virtually all the recommended advisements and waivers were included on Bosch's *Faretta* waiver form. Bosch was also advised of the potential consequences if convicted at trial and he reiterated his desire to represent himself throughout the court proceedings where the court repeated many of the advisements on the form.

Bosch contends he could not knowingly and intelligently waive his right to counsel because he was a homeless German citizen with no prior criminal history. But our high court has " 'rejected claims that the fact or likelihood that an unskilled, self-represented defendant will perform poorly in conducting his or her own defense must defeat the *Faretta* right. [¶] . . . Instead, we have accepted that the cost of recognizing a criminal defendant's right to self-representation may result " 'in detriment to the defendant, if not outright unfairness.' " [Citations.] But that is a cost that we allow defendants the choice of paying, if they can do so knowingly and voluntarily.' " (*People v. Frederickson* (2020) 8 Cal.5th 963, 1000.) Bosch's allegations do not establish that the trial court could lawfully reject his waiver. A defendant's "technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself." (*Faretta*, *supra*, 422 U.S. at p. 836.)

This case is unlike *People v. Ruffin* (2017) 12 Cal.App.5th 536. There, "appellant's request for self-representation was 'made in passing anger or frustration' about the need to continue the trial." (*Id*. at p. 550.) When the case was assigned to a trial courtroom later that day, Ruffin said, " 'Really I don't want to represent myself pro per.' " (*Id*. at p. 542.) But here Bosch

8

consistently requested to represent himself, despite the court's numerous attempts to dissuade him.

The record here establishes that Bosch knowingly and intelligently waived his right to counsel.

*Competency for self-representation*

Bosch contends the trial court erred because it did not understand it had the discretion to appoint counsel even if Bosch was competent to stand trial. The court stated, "United States Supreme Court precedent . . . basically says that if . . . someone is competent to stand trial, then they're necessarily competent to represent themselves. I quarrel with that precedent, but I'm bound by it, and so we'll honor it."

We agree the court erred but conclude the error is harmless. There is no substantial evidence that Bosch suffered from a severe mental illness that would render him incompetent to represent himself.

Competence *to stand trial* requires "the capacity to understand the nature and object of the proceedings . . . , to consult with counsel, and to assist in preparing [a] defense." (*Indiana v. Edwards* (2008) 554 U.S. 164, 170 (*Edwards*), italics omitted; § 1367, subd. (a).) Competence *to represent oneself at trial* requires the ability "to carry out the basic tasks needed to present [one's] own defense without the help of counsel." (*Edwards*, at pp. 175-176.)

"[T]he Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from *severe mental illness* to the point where they are not competent to conduct trial proceedings by themselves." (*Edwards*, *supra*, 554 U.S. at p. 178, italics added.) The high court referred to such persons as "gray-area defendants."

9

(*Id.* at pp. 172-174.) *Edwards* relied on the position of the American Psychiatric Association that " '[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.' " (*Id.* at p. 176.) The high court upheld the rejection of Edwards's request to represent himself based on psychiatric and neuropsychological evidence he was schizophrenic and suffered from "serious thinking difficulties and delusions." (*Id.* at p. 168.)

In *People v. Johnson* (2012) 53 Cal.4th 519 (*Johnson*), the California Supreme Court "accept[ed] the high court's invitation" and held that "California courts [may] deny self-representation when *Edwards* permits such denial." (*Johnson*, at p. 525.) "A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides." (*Id.* at p. 531.) To deny self-representation, a defendant must "suffer[] from a *severe mental illness* to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Id.* at p. 530, italics added.)

"*Edwards* and *Johnson* both require that the defendant's incompetence to represent [themselves] derive from a 'severe mental illness.' " (*People v. Orosco* (2022) 82 Cal.App.5th 348, 360.) The record here is devoid of substantial evidence that Bosch suffered from a severe mental illness. (*Id.* at p. 363.) Dr. Angelos reported that Bosch "vaguely described himself as having mental health problems but has been unsuccessful or is unable to obtain treatment for his mental health issues." Dr. Angelos found Bosch

10

did not exhibit signs of hallucinations or delusional thinking. Bosch's memory, concentration, and attention were intact. His intellectual functioning was within normal range. Dr. Angelos concluded, "It is more likely than not he does *not* suffer from a severe mood or severe thought disorder which impairs his factual understanding of his status." (Italics added.)

Dr. Angelos nevertheless stated, "It is more likely than not he [Bosch] *does suffer* from a severe mood or severe thought disorder which impairs his appreciation of his status in reference to the proceedings." (Italics added.) But Dr. Angelos's report contradicted this statement, concluding, "Mr. Bosch's thought processes were logical and goal-directed. . . . His mood appeared to be neutral and his affect varied appropriately with the content of our conversation." Nor did Dr. Angelos's report identify areas where Bosch misunderstood his status regarding the proceedings. Bosch stated he was facing serious charges at trial, gave his versions of the two assaults, stated he intended to represent himself, and noted possible outcomes of being found guilty or innocent or having the charges dropped.

Dr. Angelos concluded Bosch "[i]s not ready to proceed to a hearing," and "[i]t is more likely than not he is not capable of presenting his defense in a knowledgeable, effective and rational manner." But this conclusion was not based on a severe mental illness. It was based on what Dr. Angelos viewed as "a serious error of judgment" on Bosch's part, i.e., that he believed "he has accumulated enough legal expertise to defend himself" during his approximately two months in custody.

Moreover, neither Dr. Murphy nor Dr. Tahmisian concluded Bosch "suffer[ed] from severe mental illness to the point where [he was] not competent to conduct trial proceedings by [himself]."

11

(*Johnson, supra*, 53 Cal.4th at p. 527.)  Rather, both doctors stated Bosch did not exhibit delusions or hallucinations.  Dr. Murphy wrote that Bosch "denied any mental health history" or "drug history."  She observed no "thought or mood disorder," no "overt symptoms of mental health difficulty," and no evidence of "mental illness interference with his functioning."

Bosch told Dr. Tahmisian he attended drug rehabilitation more than six years earlier, but he "was not clear on current mental health contacts."  Dr. Tahmisian stated that Bosch's "pseud[o]-knowledge of legal terms and procedures" would create a "challenge" for defense counsel, but it was "not sourced in mental illness or cognitive impairment."  He noted that Bosch "volitionally chooses" not to cooperate at times, but "this deficiency in cooperation is not due to a mental disorder or cognitive disability but a conscious choice."  As in *People v. Taylor* (2009) 47 Cal.4th 850, 864, "such conflicts were attributable to difficult aspects of defendant's personality rather than to a diagnosed mental illness."

The unsupported statement in Dr. Angelo's report about "a severe mood or severe thought disorder" was inconsistent with the rest of his report, and with the more current reports of Drs. Murphy and Tahmisian.  General concerns about a defendant's mental state, including statements by an expert that a defendant suffers from mental illness, do not constitute substantial evidence of incompetence for self-representation where, as here, they "offer little insight into whether defendant lacked the ability to . . . participate in and conduct his defense."  (*People v. Mickel* (2016) 2 Cal.5th 181, 204; *People v. Laudermilk* (1967) 67 Cal.2d 272, 285.) The indications of mental illness here are far less than those in *People v. Halvorsen* (2007) 42 Cal.4th 379, 402-403, where our Supreme Court found the defendant's " 'rambling, marginally

12

relevant speeches' " and a forensic psychiatrist's diagnosis of psychosis did not constitute substantial evidence of incompetence.

Bosch's reliance upon *People v. Shiga* (2016) 6 Cal.App.5th 22, is unavailing. As here, the trial court erroneously believed the defendant's competence to stand trial required the court to allow self-representation. (*Id*. at p. 40.) Shiga "had been regularly seeing a psychiatrist" and "had been diagnosed with schizophrenia and delusions." (*Id*. at p. 43.) But here, there was no substantial evidence that Bosch suffered from a severe mental illness. Thus, the trial court was not permitted to deny his request for self-representation.

*Sufficiency of the evidence*

Bosch also contends the evidence of assault with a deadly weapon is insufficient because his boot was not a deadly weapon. We disagree.

The jury here was instructed: "A *deadly weapon other than a firearm* is any object, instrument, or weapon that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (CALCRIM No. 875 (modified); *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029 (*Aguilar*).)

*Aguilar* held that "a 'deadly weapon' within the meaning of section 245 must be an object extrinsic to the human body. Bare hands or feet, therefore, cannot be deadly weapons." (*Aguilar*, *supra*, 16 Cal.4th at p. 1034.) Although the defendants there wore shoes, the record did not indicate the type of footwear. (*Id*. at pp. 1034-1035.) The court recognized, "There can be no doubt that some footwear, such as hobnailed or steel-toed boots, is capable of being wielded in a way likely to produce death or serious injury, and as such may constitute weapons within the meaning of section 245, subdivision (a)(1)." (*Id*. at p. 1035.) The examples of

13

hobnailed and steel-toed boots were not exclusive and did not preclude other kinds of boots from being used as deadly weapons.

Applying the substantial evidence standard of review (*People v. Navarro* (2021) 12 Cal.5th 285, 302), we conclude the evidence supports the jury's conclusion that Bosch's boot was used as a deadly weapon. The jury was shown a photograph of the boots. A police officer described them as "[a]verage hiking boots" that are "more durable" than other footwear, encased with "thicker leather," and "a hardened shell on the nose of the shoe for kicking rocks." In the officer's experience investigating assaults, hiking boots inflict more damage and are more dangerous or deadly than lighter footwear. The serious injuries Bosch inflicted support the conclusion that his boot could cause and was used in a way likely to cause great bodily injury.

*Dual convictions*

For the assault on Hermilio A., the jury convicted Bosch of both assault with a deadly weapon (§ 245, subd. (a)(1), count 1) and force likely assault (§ 245, subd. (a)(4), count 2). For each of these counts, the court imposed a three-year sentence plus a three-year enhancement for inflicting great bodily injury (§ 12022.7, subd. (a)). The court stayed the sentence and enhancement for count 2 pursuant to section 654.

After Bosch's sentence, our Supreme Court held that assault with a deadly weapon and force likely assault are different statements of the same offense, and a defendant may not be convicted of both if based on the same act or course of conduct. (*People v. Aguayo* (2022) 13 Cal.5th 974, 993.) The parties agree that Bosch cannot be convicted of both counts, but disagree on the remedy. Bosch contends the assault with a deadly weapon conviction should be stricken. The Attorney General contends the

14

two counts should be consolidated.

We conclude consolidation is appropriate. Before 2011, assault with a deadly weapon and force likely assault were alternate ways to violate former section 245, subdivision (a)(1). Consolidation reflects the " 'true nature' " of the conviction (*People v. Aguayo*, *supra*, 13 Cal.5th at p. 987): the boot was a deadly weapon because it was used in a way that was likely to cause great bodily injury. (See *People v. Craig* (1941) 17 Cal.2d 453, 459, overruled on other grounds, *People v. White* (2017) 2 Cal.5th 349, 359.)

DISPOSITION

The judgment is modified to consolidate the convictions of assault with a deadly weapon (count 1) and assault with force likely to cause great bodily injury (count 2) into a single violation of subdivisions (a)(1) and (a)(4) of section 245. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P.J.                    CODY, J.

15

Attachment A

| | | FOR COURT USE ONLY |
| --- | --- | --- |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA
STREET ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

SEP 2 9 2021

Darrel E. Parker, Executive Officer
BY *Gina Garrett*
Gina Garrett, Deputy Clerk

PLAINTIFF: People of the State of California

DEFENDANT: *Michael Bosch*

**ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL**
(Faretta Waiver)

CASE NUMBER: *21-41793*

Fill out this form if you wish to act as your own attorney (*in propria persona* or "pro per"). Initial the box for each item only if you understand and agree with it, and sign and date the form at the end where it says "*Defendant's Signature*". If you have any questions about anything on this form, ask your attorney, if you have one, or the judge. The judge may ask you questions about your decision to give up your right to be represented by a professional attorney.

**CONSTITUTIONAL RIGHTS**

**Initials**

1.  I am the defendant in the above-entitled case. I can read and write. I understand my constitutional rights including the following:

*MB*

A.  **Right to an Attorney** – I understand that I have an absolute right to be represented by an attorney at all stages of the proceedings and, if I do not have the money to pay for an attorney, that one will be appointed for me by the Court at no cost.

*MB*

B.  **Right to A Speedy Trial and Public Jury Trial** – I understand that I have a right to a speedy and public trial by a jury of twelve citizens drawn from the community.

*MB*

C.  **Right to Subpoena Witnesses and Records** – I understand that I have the right to the reasonable use of the subpoena power of the Court, at no cost to me, to subpoena any witnesses or any documents that I may need in my defense.

*MB*

D.  **Right to Confront and Cross-Examine Witnesses** – I understand that I have the right to confront in open court all witnesses who will be called to testify against me, and I have the right to cross-examine those witnesses at the time of trial.

*MB*

E.  **Right Against Self-Incrimination** – I understand that I cannot be compelled to testify at the trial, but that I have the right to testify at my trial if I wish to do so.

*MB*

F.  **Right to be Released on Bail** – I understand that I may have the right to be released from jail pending trial on reasonable bail.

*MB*

G.  **Right to Self-Representation** – I understand that I have a right to act as my own attorney and may waive my right to the assistance of a professional attorney. I further understand that if I choose to act as my own attorney, I will have to conduct my own defense WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY.

*MB*

**BACKGROUND**

2.  In support of my petition to proceed in propria persona (also referred to as "pro per"), I offer the Court the following biographical information:

A.  Age: *30*   Year of Birth: *6/6/91*

B.  Education:
    1)  High School Attended: *Constantin - Vanadi - Schule*
    2)  High School Graduate  ☑ Yes   ☐ No
    3)  Additional Formal Education (if any): *2 semester University of Vienna*
    4)  Legal Education (if any):

C.  Employment Experience: *Beverage Clerk, Paper delivery, Maintenance*

SC-3068 [New Jan 2012]   ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL (Faretta Waiver)

D. I have previously acted as my own attorney in the following criminal matters: ☒ Never

| Case | Court | Year | Result |
|------|-------|------|--------|
| Case | Court | Year | Result |
| Case | Court | Year | Result |

## DANGERS AND DISADVANTAGES OF SELF-REPRESENTATION

Initials

3. I understand that there are many dangers and disadvantages in not having a professional attorney represent me. I understand that among those dangers and disadvantages are the following:

A. I understand that if I act as my own attorney, it will be necessary for me, WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY, to follow all of the requirements of the criminal law, criminal procedure, law of evidence, and rules of court.

B. I understand that the case against me will be handled by a prosecutor who is an experience trial attorney, and that I will not be entitled to special consideration or assistance by the prosecutor prior to or during the course of the trial.

C. I understand that if I act as my own attorney, it will be necessary for me WITHOUT THE ASSISTANCE OF A PROFESSIONAL ATTORNEY, to conduct my own trial, consisting of, but not limited to: making pretrial motions, selecting a jury, making an opening statement, cross-examining the witnesses for the prosecution, subpoenaing and presenting my own witnesses, making appropriate objections and motions during the course of the trial, preparing and presenting proposed jury instructions to the Court, making the final argument, and, in the event of a conviction, making the appropriate motions after trial, and representing myself at the time of the probation or sentencing hearing.

D. I understand that I will not and cannot expect to receive any special consideration or assistance from the Court. I further understand that the Court is not permitted to and will not answer any questions I may have concerning how I should proceed, what law might apply or the correct procedure.

E. I understand that if I wish to ask the Court for funds to be used in my defense, I will have to show good cause.

F. I understand that if I ask for any additional money over the initial amount granted by the Court, I must use that money only for my defense and I will be required to keep and show the Court receipts for anything I have purchased with the money granted to me.

G. I understand that if I am in jail, it will be more difficult for me to contact witnesses and investigate my case. I understand that I will have limited access to a telephone, which will make preparations for trial more difficult, and that I will be provided no more access to legal research or legal information than any other inmate who acts as his own attorney, and that access is limited.

H. I understand that no continuance of the trial will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied.

I. I understand that depending on the stage of my case, if I change my mind and request an attorney to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney.

J. I understand that in conducting the trial, I may be limited in my movements in the courtroom. All documents, for example, will be handed to witnesses when necessary through the bailiff. I may be required to remain in my seat at counsel table and may not have free movement in the courtroom.

SC-3068 [New Jan 2012]  **ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL (Faretta Waiver)**

K.    I understand that I must not act disrespectfully in court. I understand that the Judge may terminate my right to act as my own attorney in the event that I engage in serious misconduct or obstruct the conduct and progress of the trial. I understand that if my right to act as my own attorney is terminated, I may have to be represented by an attorney, appointed by the Judge, who will then take over the case at whatever stage the case may be in.

L.    I understand that if at some point an appointed attorney does take over my case, that attorney may be at a disadvantage and that such a disadvantage will not be considered an issue on appeal.

M.    I understand that misconduct occurring outside of court may also result in restriction or termination of my right to act as my own attorney. I also understand that acting as my own attorney will not shield me from disciplinary actions within the jail, and that I will be subject to the same disciplinary measures as all other inmates for misconduct occurring in the jail.

N.    I understand that any defendant who is represented by an attorney prior to being convicted may complain as part of a timely appeal that the attorney's assistance was ineffective. I understand that by acting as my own attorney, I am giving up any right to claim on appeal that I had ineffective assistance of counsel.

**CHARGES AND CONSEQUENCES**

4.    I understand that I am giving up having a professional attorney explain to me what crimes I am charged with, and any possible legal defenses I may have to those crimes.

5.    I understand that I am giving up having a professional attorney explain to me how and which charges and enhancements require proof of general criminal intent, which charges require proof of a specific intent or mental state, and what state of mind may apply to any defenses I may have.

6.    I understand that I am giving up having a professional attorney determine what facts must be proved before I can be found guilty and that if I do not know what those facts are, I will have to learn about those facts on my own.

7.    I understand that I am giving up having a professional attorney determine, if I am convicted, what post-trial motions and sentencing options I may have, and to present those motions and options to the Court.

**COURT'S ADVICE AND RECOMMENDATIONS**

8.    I understand that it is the advice and recommendation of this Court that I do not act as my own attorney and that I accept a court-appointed attorney. I understand that if I accept court-appointed attorney, a trial attorney will be assigned to defend me. I understand that the attorney would be able to investigate my case, file pretrial motions, conduct the trial, and generally advise me on what to do.

9.    I understand that this written request to act as my own attorney will be filed with and become part of the court case file. I further understand that on any appeal that may be taken from a conviction, or upon the filing of a petition for an extraordinary writ, this request will be forwarded to any court of appeal and will be considered by that court in determining whether I knowingly and intelligently waived my right to an attorney.

10.    I understand all that I have read and understood all that the Court has told me. Having in mind all that I have been advised and all of the dangers and disadvantages of acting as my own attorney, it is still my request that I act as my own attorney.

**I hereby certify that I have read, understood and considered all of the above warnings included in this petition, and I still want to act as my own attorney. I freely and voluntarily give up my right to have a professional attorney represent me.**

Signed: _____    Dated: _____
             *Defendant's Signature*

SC-3068 [New Jan 2012]      ADVISEMENT AND WAIVER OF RIGHT TO COUNSEL (Faretta Waiver)

## INTERPRETER'S STATEMENT (If applicable)

I, having been duly sworn or having a written oath on file, certify that I truly translated this Advisement and Waiver of Right to Counsel (*Faretta* waiver) form to the defendant in the language indicated below. The defendant stated that he or she understood the contents on the form, and then initialed and signed the form.

Language: Spanish                    Other (specify) _____

Signed _____            Dated: _____
            *Court Interpreter*

_____
        *Type or Print Name*


The court finds that the defendant has been advised of his constitutional and statutory rights and the dangers and disadvantages of self-representation; and has made a voluntary, knowing, and intelligent waiver of the right to counsel. The court grants the defendant's request for self-representation.

Dated: ___9/29/21___            _____
                                            JUDGE OF THE SUPERIOR COURT

Sep 28 2021 01:48PM SB Superior Ct Dept 10 (805)899-1191        page 4

Brian E. Hill, Judge

Superior Court County of Santa Barbara

_____

Adrian Dresel-Velasquez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.